STOKES v DAIMLERCHRYSLER CORPORATION

Docket No. 268544. Submitted August 8, 2006, at Detroit. Decided
    October 26, 2006, at 9:05 a.m. Leave to appeal sought.

Fredie Stokes sought workers' compensation benefits for a disabling
    cervical spine injury he incurred while working as a forklift driver
    for DaimlerChrysler Corporation. A workers' compensation mag-
    istrate granted Stokes an open award of benefits. DaimlerChrysler
    appealed to the Workers' Compensation Appellate Commission
    (WCAC), which remanded the case to the magistrate for reconsid-
    eration in light of *Sington v Chrysler Corp*, 467 Mich 144 (2002),
    which set a new standard for determining disability under MCL
    418.301(4). The magistrate again awarded Stokes benefits, and the
    WCAC, sitting en banc, affirmed the award. DaimlerChrysler
    appealed.

    The Court of Appeals *held*:

    1. The WCAC did not err in concluding that evidence of the
    plaintiff's previous jobs, salary, training, and education, together
    with testimony that the plaintiff could no longer perform any of
    the jobs within his qualifications and training that pay the
    maximum wage, established a prima facie showing of disability.

    2. The WCAC erred to the extent that it held that a transfer-
    able skills analysis is irrelevant, as a matter of law, in evaluating
    the plaintiff's qualifications and training. However, the WCAC did
    not err in concluding that a transferable skills analysis is not a
    necessary part of a plaintiff's proofs. The burden of proof remains
    on the plaintiff to show disability, despite the fact that, as a
    practical matter, in cases where the existence of other jobs within
    the plaintiff's qualifications and training are not apparent, the
    defendant is expected to establish facts on which to base a contrary
    conclusion.

    3. The WCAC erred in concluding that the magistrate had no
    authority to order the plaintiff to provide discovery to the defen-
    dant. The magistrate had the authority, under *Boggetta v Bur-
    roughs Corp*, 368 Mich 600 (1962), to make those inquiries and
    investigations that he deemed necessary. However, because this
    authority does not derive from the broad rules of discovery set
    forth in the Michigan Court Rules, the defendant was not entitled

to have its vocational expert interview the plaintiff; it was entitled only to whatever form of discovery the magistrate deemed necessary to develop a defense. In light of the fact that the defendant had access to prior testimony, the plaintiff's employment records, and considerable medical information, the WCAC did not err in concluding that the magistrate did not abuse his discretion in declining to order the plaintiff to be interviewed by the defense expert.

4. In light of the WCAC's conclusion that the plaintiff lost wages as a result of his work-related medical impairment, its lengthy discussion of that issue was unnecessary and confusing, and is therefore vacated, along with the WCAC's unnecessary and confusing discussion of the partial disability provisions.

5. The magistrate did not abuse his discretion by refusing to adjourn the trial so that the defendant's vocational expert could review the plaintiff's trial testimony given that the expert had been retained only five days before trial and had not been provided with the plaintiff's employment records or any of the deposition testimony, and the WCAC was not without basis for agreeing that the adjournment was properly denied.

Affirmed in part and vacated in part.

SAAD, P.J., dissenting, stating that the WCAC clearly erred in its ruling that work suitable to the plaintiff's qualifications and training is limited to the jobs that he performed, without reference to whether he possessed other transferable skills. This error was not harmless. The WCAC further erred by ruling that the magistrate did not have the authority to order the plaintiff to provide discovery to the defendant, and the case should be remanded to the magistrate with directions to order the discovery that is reasonably necessary to allow the defendant to prepare its defense. Also, the WCAC legally erred in its statements regarding whether the plaintiff was required to show that his work-related injury caused his current loss of wage-earning capacity, which is a fundamental part of the plaintiff's proofs under MCL 418.301(4). Finally, the majority incorrectly analyzed the defendant's argument that the WCAC erroneously concluded that the defendant bore the burden of disproving disability by affirmatively proving the existence of jobs within the plaintiff's qualifications and training. The plaintiff in a workers' compensation matter must establish his or her work-related disability and entitlement to benefits by a preponderance of the evidence, and the WCAC committed a clear legal error by concluding otherwise. The WCAC's decision should be reversed, and the case should be remanded to the magistrate.

1. WORKERS' COMPENSATION — DISABILITY — MAXIMUM WAGE-EARNING CAPACITY.

A finding of disability requires a determination that there is a limitation in an employee's maximum wage-earning capacity in all jobs suitable to an injured employee's qualifications and training (MCL 418.301[4]).

2. WORKERS' COMPENSATION — DISABILITY — PRIMA FACIE CASE.

Evidence of an employee's previous jobs, salary, training, and education, together with testimony that the employee could no longer perform any of the jobs within his or her qualifications and training that pay the maximum wage, establish a prima facie showing of disability (MCL 418.301[4]).

3. WORKERS' COMPENSATION — DISABILITY — BURDEN OF PROOF.

The burden of proof remains on the employee to show disability, despite the fact that, in cases where the existence of other jobs within the employee's qualifications and training are not apparent, the employer is expected to establish facts on which to base a contrary conclusion (MCL 418.301[4]).

4. WORKERS' COMPENSATION — DISCOVERY — AUTHORITY OF THE MAGISTRATE.

A magistrate in a workers' compensation case has the authority to make those inquiries and investigations that he or she deems necessary (MCL 418.851).

5. WORKERS' COMPENSATION — DISCOVERY — SCOPE.

The broad discovery provisions contained in the Michigan Court Rules do not apply to workers' compensation cases; therefore, a defendant is entitled only to whatever form of discovery the magistrate deems necessary to develop a defense (MCL 418.851).

*Mancini, Schreuder, Kline & Conrad, P.C.* (by *Roger R. Kline*) (*Daryl Royal*, of counsel), for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for the defendant.

Before: SAAD, P.J., and JANSEN and WHITE, JJ.

WHITE, J. Defendant appeals by leave granted the en banc opinion of the Workers' Compensation Appellate Commission (WCAC) affirming an open award of dis-

ability benefits. Defendant argues that the WCAC committed errors of law in applying the standard of disability under *Sington v Chrysler Corp*, 467 Mich 144; 648 NW2d 624 (2002), and in concluding that the magistrate had no general authority to grant pretrial discovery. We conclude that the WCAC reached a result in this case—affirming the magistrate's grant of benefits—that is amply supported by the record, and affirm the result. However, because the opinion is overly broad in parts,[1] and is capable of being understood as unduly restrictive in its application of *Sington, supra,* we vacate the opinion to the extent it is inconsistent with the principles set forth herein.

I

Plaintiff started working for defendant in 1971 when he was 19 years old. His work for defendant involved driving forklifts to unload trucks and transport parts in and around defendant's plant. He also drove "mules," which are small trucks used to transport parts around the plant. Toward the end of his career with defendant, plaintiff was employed as a dispatch driver, which required that he enter data into a computer throughout the day in addition to unloading, driving, and delivering. Plaintiff's work as a dispatch driver still required that he drive the forklifts or mules five hours a day. Operating the forklifts and mules required plaintiff to engage in repetitive flexion, extension, and twisting of plaintiff's cervical spine, and the frequent jarring he experienced while driving caused repeated minor im-

---

[1] No doubt in an effort to clarify the applicable law and procedure, the en banc panel produced a 51-page majority opinion, a 39-page dissent, and a separate 8-page dissent. The parties and amici curiae differ in their reading of the majority opinion. Because of its length and breadth, one can find language supporting multiple interpretations.

pact injuries to the spine. Near the end of the 1990s, plaintiff began feeling pain in his cervical spine and arms while working. The pain in plaintiff's neck and arms increased until the fall of 1999, when it forced plaintiff to stop working. According to plaintiff's treating physician, Dr. Arturo Paz, the jarring and other physical activity caused repetitive trauma to plaintiff's cervical spine and aggravated plaintiff's existing rheumatoid arthritis so as to leave him unable to perform his job as a dispatch driver.

Plaintiff sought workers' compensation benefits based on a cervical spine disability. The magistrate accepted Dr. Paz's testimony that the disabling cervical spine condition was caused by the repetitive flexion, extension, and jarring of plaintiff's cervical spine during his work for defendant. Accordingly, the magistrate granted plaintiff an open award of benefits. The magistrate's original opinion does not engage in a separate analysis of disability under MCL 418.301(4), but apparently relied on *Haske v Transport Leasing*, 455 Mich 628; 566 NW2d 896 (1997),[2] which defined "disability" to include an injury that prevents an employee from performing a single job within his qualifications and training. *Id.* at 655.

Defendant appealed the award of benefits to the WCAC, arguing that the magistrate erred in finding that plaintiff suffered a work-related injury rather than a noncompensable condition of aging. In the same appeal, defendant argued that the case should be remanded to the magistrate for reconsideration of the disability issue in light of *Sington, supra,* which overruled *Haske* with respect to its definition of "disability." The WCAC affirmed the magistrate's finding that plaintiff had suffered a work-related injury as supported by

---

[2] *Haske* was subsequently overruled in part by *Sington, supra* at 161.

competent, material, and substantial evidence. How-
ever, the WCAC remanded the matter to the magistrate
for reconsideration of his disability finding under *Sing-
ton*, explaining:

> Dr. Paz found Stokes to be disabled because he could not
> return to his job as a hi-lo driver. Based on this testimony,
> the magistrate found Stokes "could not return to that job"
> or "any duties of that job."
>
> Under *Sington*, the test is not whether a claimant can
> return to the work he was last performing, but whether the
> claimant has suffered a limitation of his maximum wage
> earning capacity in work within his qualifications and
> training. On remand, the magistrate will address only the
> issue of Stokes' disability under the *Sington* standard.

Before the hearing after remand, defendant sought to
have plaintiff interviewed by a vocational rehabilitation
expert to prepare the expert to give testimony relevant
to the application of *Sington*. The magistrate denied
this request. Defense counsel renewed this request at
the start of the hearing on remand, and the magistrate
again refused to order plaintiff to submit to an inter-
view by defendant's vocational expert. The magistrate
noted that while he rejected defendant's motion to have
plaintiff interviewed by defendant's vocational expert,
he did not prevent defendant from doing anything else
to acquire this information.

Plaintiff testified regarding his employment back-
ground, qualification, and training. Plaintiff graduated
from high school. He took drafting in junior high school
and wood shop in high school, but otherwise had no
vocational training. He attended college for very brief
periods but did not obtain a degree or any certification.
He did not take any other job training or adult educa-
tion classes. Before working for defendant, plaintiff
worked driving a forklift at a refrigerator warehouse

and stocking merchandise at a TV store. He also occasionally helped stock shelves at his cousin's record store. None of those jobs paid anywhere near the wage plaintiff earned working for defendant. Plaintiff had no typing skills; his data-entry experience as a dispatch driver consisted of typing rack numbers into the computer. As far as recreational activities, plaintiff testified that he played chess and cards and watched sports on TV. He accompanied friends while they golfed, and rode in, but did not drive, a golf cart.

At the hearing, defendant presented testimony from vocational rehabilitation expert Robert Seal. Defense counsel presented Seal with a very lengthy hypothetical question based on the relevant factors raised in plaintiff's testimony, asking whether he could give an opinion regarding plaintiff's wage-earning capacity given plaintiff's qualifications, training, and restrictions. Seal answered as follows:

> Well, at this point in time it would be nearly speculative on my part to render an opinion about his wage earning capacity. I would need to actually contact employers to survey what is out there. And to determine again, job availability and wages for those accompanying jobs.
>
> And actually, even prior to that I would probably need to complete what is called the transferable skills analysis, where I would take the profile that was essentially presented of his work history, his educational background, his restrictions as outlined by both physicians and enter that information into the computer and essentially have that profile, all the variables of that profile bounced off of the U.S. Department of Labor's Dictionary of Occupational Titles. All of their job classifications to assess what jobs might be most appropriate falling within the restrictions and other qualifications and training as noted.

Immediately following Seal's response to the hypothetical question, defense counsel asked to adjourn or

continue the hearing to allow Seal to perform the analysis mentioned so as to develop proofs relevant to the *Sington* analysis. Plaintiff's counsel objected, arguing that the question appeared to concern residual earning capacity under MCL 418.301(5), rather than disability under MCL 418.301(4) and *Sington*. Defense counsel responded that he was attempting to develop evidence showing that plaintiff was still able to earn wages at his prior level or that plaintiff had a residual postinjury earning capacity, which would allow defendant to reduce his disability benefits.

The following exchange then took place between the magistrate and defendant's expert witness, Seal:

> *The Magistrate*:—I just have a question. When were you contacted, Mr. Seal, regarding this case?
>
> *Mr. Seal*: Thursday, October 2nd.
>
> *The Magistrate*: Okay. And have you been provided before today's hearing any of the deposition testimony or any of the Plaintiff's job files?
>
> *Mr. Seal*: No. Not any of the deposition material.
>
> *The Magistrate*: Alright. Have you seen his, have you seen his job application or have you seen his employment file with Chrysler?
>
> *Mr. Seal*: No.

The magistrate denied defendant's motion to adjourn. Defense counsel argued that because the magistrate had previously denied his requests to have plaintiff interviewed by an expert to prepare a labor market evaluation in advance of the hearing, defense counsel would have had no reason to provide Seal with any information before the hearing. The magistrate conceded that he had rejected defendant's motion for a vocational interview of plaintiff, but asserted that he

had not prevented defense counsel from doing anything else to prepare his expert. Seal was then excused.

The magistrate's opinion after remand incorporated his earlier findings by reference and summarized plaintiff's testimony regarding his education, training, and work experience. The magistrate noted Seal's credentials as a vocational expert and summarized his testimony as follows:

> Mr. Seal testified, in response to an accurate hypothetical regarding plaintiff's qualifications, training, and experience, that he could only speculate with regard to plaintiff'[s] qualifications and training as well as wage earning capacity. He would have to contact employers and would need to meet with plaintiff to perform a transferable job skill analysis. He admitted that he never reviewed any of plaintiff's personnel file in an attempt to identify potential transferable job skills. Additionally, he admitted that he never reviewed any medical testimony in this matter to identify plaintiff's job restrictions.

The magistrate recognized that plaintiff had the burden of proving his case by a preponderance of the evidence and concluded that plaintiff had proven a disability under MCL 418.301(4) and *Sington*, explaining as follows:

> In order to establish a work-related disability, plaintiff must demonstrate that he has a limitation of his maximum wage earning capacity in work suitable to his qualifications and training. MCL 418.301(4); MSA 7.237(301)(4); *Sington v Chrysler Corp*, 467 Mich 144, 154; 648 NW2d 624 (2002). I find that plaintiff's job training and experience is limited to that of a warehouse worker and hi-lo driver. Based upon plaintiff's qualifications and training as borne out by his testimony at trial and at the remand hearing, I find that he sustained his burden of proving a work related disability.

> I reiterate my finding that Dr. Paz's testimony is credible. Dr. Paz testified that plaintiff could not perform any

repetitive bending, twisting, turning, or jarring of his neck. Additionally, I repeat even Dr. Mayer's findings that plaintiff could not perform jobs that required cervical rotation, flexion, or extension or jobs that required fine motor coordination (Mayer, 32). These restrictions are based on his significant spinal cord compression.

I accept plaintiff's testimony that he cannot perform any of his previous jobs. In fact, I find that plaintiff's training and qualifications limit him to physically strenuous work from which he is clearly disabled due to his significant spinal cord compression. Further, defendant failed to submit any evidence that any other jobs within his qualifications or training and [sic] that could provide plaintiff with his maximum wage earning capacity. Mr. Seal was credible, and he testified that he could only speculate with regard to plaintiff's job abilities given that he had been unable to meet with plaintiff (by my order) or review plaintiff's employment records or medical records. Therefore, his testimony, what little he was able to give, is irrelevant.

II

Defendant appealed the magistrate's decision to the WCAC, raising four arguments: (1) the magistrate's rulings denied defendant due process of law by precluding it from presenting a viable defense; (2) the magistrate legally erred by refusing to order plaintiff to meet with defendant's vocational expert; (3) the magistrate erred in defining the parameters of plaintiff's qualifications and training; and (4) the magistrate erred as a matter of law by effectively reading the partial disability provisions out of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* The WCAC ordered that the appeal be considered by an en banc panel, and instructed the parties to submit supplemental briefs regarding "(a) the authority of the magistrate to compel disclosure of information by a party in a

discovery process and (b) the application of *Sington v Chrysler Corp*, 467 Mich 144 (2002), and wage loss to this case."

The WCAC affirmed the magistrate's decision in a majority opinion written by Commissioner Granner S. Ries and concurred in by Commissioners Martha M. Glaser and Roger G. Will. The WCAC majority found that the magistrate did not err in refusing to order plaintiff to meet with defendant's vocational expert, that defendant had access to the relevant information ahead of the hearing and a fair opportunity to present its proofs to the magistrate, that the magistrate's finding of disability was supported by the record, that the magistrate followed the relevant law under MCL 418.301(4) and *Sington*, and that the conclusion that plaintiff is disabled "is not contradicted by speculation that plaintiff might be able to earn wages because the record fails to reflect employment suitable to plaintiff's qualifications and training that represents a meaningful opportunity for plaintiff to earn wages." Commissioners James J. Kent and Gregory A. Przybylo disagreed with the majority's conclusions and filed separate dissents.

With regard to the magistrate's refusal to order plaintiff to be examined or questioned by defendant's vocational expert, the majority wrote:

> It is the conventional wisdom in worker's compensation circles that a "forcible disclosure of information"—identified as "discovery" in other tribunals—is not permitted in worker's compensation. . . . [W]e believe that the conventional wisdom is accurate, is supported by case law, and is not refuted by isolated administrative cases that have failed to investigate the issue beyond a casual reading of what is, ultimately, dicta in *Boggetta v Burroughs Corp*, 368 Mich 600 [118 NW2d 980] (1962).

The majority further stated that since *Boggetta* was actually decided on jurisdictional grounds, the discus-

sion of a right to discovery in workers' compensation cases
was nonbinding dictum. While the majority noted some
very specific statutory provisions for the pretrial exchange
of information, it found no express authority allowing
general discovery in the language of the WDCA. Because
there is no express authority permitting the magistrate to
order a meeting with defendant's vocational expert or to
order other discovery as necessary, the majority concluded
that the magistrate had no power to do so regardless of the
defendant's need or equitable considerations of fairness.
The majority concluded:

> It is apparent that there is no actual authority to allow
> the magistrate to order a party to disgorge information to
> the other party, except in limited situations not applicable
> here, and any implied authority that may be thought to
> exist is not legally sufficient. Accordingly, we hold that the
> magistrate did not abuse his discretion in failing to require
> plaintiff to meet with defendant's vocational consultant
> because he lacked the authority necessary to order that
> such a meeting take place.
>
> * * *
>
> *Sington* supplies the need for information (at least, so
> we are told), but not the authority. The legislature must
> provide the authority, and it has not done so.

The majority found that the denial of discovery and
refusal to adjourn the hearing did not deprive defen-
dant of any relevant information regarding plaintiff's
physical abilities, qualifications, and training. The ma-
jority observed that medical evidence had been pre-
sented at the first hearing and was available to defen-
dant, and while the first hearing did not reveal
information regarding plaintiff's education and work
experience, plaintiff had been continuously employed
by defendant since he was 19 years old, so defendant's

own records would reveal any relevant employment history, training, and education.

The majority agreed with the magistrate that plaintiff's physical condition kept him from returning to the jobs he previously held. Because there was no evidence of any jobs plaintiff was able to perform that paid him the same or more than he made working for defendant, the majority concluded that he had shown disability under MCL 418.301(4) and *Sington*. The majority rejected defendant's argument that the magistrate erred by assessing plaintiff's qualifications and training solely on the basis of plaintiff's prior employment history:

> We conclude that an employee's qualifications and training represent, in effect, the employee's resume: a listing of the characteristics of the jobs the employee has held and how much they pay and the training that the employee has been provided prior to the work-related injury. Such characteristics of the jobs held, along with an elucidation of any training the employee may have undergone, will enable a determination to be made as to the work which is suitable to the employee's qualifications and training. Further, the qualifications and training will be, initially, whatever plaintiff's testimony describes them to be and the party wishing to augment the description of the employee's qualification and training has the obligation to present such evidence. A party cannot rely upon his opponent to present the evidence out of which his or her claim or defense will be construed. Moreover, plaintiff's testimony may or may not be sufficient to allow for a determination as to what work is suitable to qualifications and training.

The majority stated that MCL 418.301(4) contained nothing concerning a transferable skills analysis and that prior post-*Sington* WCAC opinions "should not be read as requiring the employee to show that such other skills as he may possess actually transfer to the job market." Finally, the majority determined that a "transferable skills analysis" would inaccurately depict

a claimant's actual ability to obtain gainful employment and result in a virtually impossible burden of proof for the plaintiff:

> For these reasons, we reject the concept that the measurement of work suitable to an employee's qualifications and training includes a "transferable skills" analysis. Such an analysis suggests that work which the employee has never performed and, therefore, is totally unaware of its physical or mental requirements, can be utilized to measure disability.

> While an employee's qualifications and training represent the employee's resume, *Peacock v General Motors Corp*, 2003 ACO #274, we do not agree with the assertion that the wage earning capacity for any job suitable to the established qualifications and training must be shown. Such proofs could go on forever if the employee has held even a few different kinds of jobs. And, no matter how exhaustive (and exhausting) the proofs, such a standard still leaves open the employer's arguments in briefing on appeal that the employee can answer only with argument and not with evidence. Both employee and employer must be excused from impossible burdens.

> Just as the use of such theoretical employment after the injury cannot be utilized to refute a claim of disability, neither can theoretical employment be utilized at the time of the employee's injury to describe the field of employment against which disability and impairment is measured.

With regard to the existence of employment within the employee's qualifications and training that pays a wage equivalent to his maximum income under *Sington*, the majority determined that the defendant-employer must demonstrate the existence of actual jobs available to the plaintiff. The majority concluded:

> In this case, plaintiff has a serious medical impairment which precludes the performance of any and all work the record reveals he has ever performed. He is, as a result, totally disabled within a field of employment that com-

prises his qualifications and training. Were it demonstrated that there was work available to him which represents a meaningful opportunity to earn, even if short of an actual offer of work, he could have been found to be partially disabled. But, short of a firm intention not to work at an opportunity to earn wages which represents a meaningful opportunity to work in employment that can be performed on a competitive and sustained basis, there is no resulting alteration in the worker's compensation rate. An employee cannot profit when the barrier to a return to the work force is a unilateral intention not to work.

The magistrate's findings of fact are supported by competent, material, and substantial evidence and, when viewed under the proper legal standard as embodied by MCL 418.301(4), MCL 418.351, MCL 418.361(1), and MCL 418.371(1), demonstrate that he is totally disabled.

III

Defendant raises five basic arguments in this appeal: (1) the WCAC improperly limited the definition of work "suitable to plaintiff's qualifications and training" to work that plaintiff had performed in the past; (2) the WCAC erroneously concluded that it was not necessary for plaintiff to prove a causal link between his disability and loss of wages; (3) the WCAC erroneously determined that defendant-employer bore the burden of disproving disability under *Sington*; (4) the WCAC erred by finding that the magistrate had no authority to order discovery necessary to permit defendant to prepare a defense under *Sington*; and (5) the WCAC erred by finding that the magistrate did not abuse his discretion by refusing to adjourn trial so that defendant's vocational expert could prepare a *Sington*-based defense using the testimony introduced at trial.

Defendant's arguments assert that the WCAC made errors of law and assessed the record before it using an erroneous legal framework; specifically, that the WCAC

misinterpreted and misapplied binding case precedent and the provisions of the WDCA. Such questions of law in a workers' compensation case are reviewed de novo. *Rakestraw v Gen Dynamics Land Systems, Inc*, 469 Mich 220, 224; 666 NW2d 199 (2003). The WCAC's interpretation of the WDCA is ordinarily entitled to deference. However, this Court "will not afford such deference where the WCAC's interpretation of the pertinent statute is clearly incorrect." *Maier v Gen Tel Co of Mich*, 247 Mich App 655, 660; 637 NW2d 263 (2001). Regarding findings of fact, the WCAC reviews the magistrate's findings under the "substantial evidence" standard, while this Court reviews the WCAC's findings of fact under the "any evidence" standard. *Mudel v Great A & P Tea Co*, 462 Mich 691, 698; 614 NW2d 607 (2000).

IV

As we observed at the outset, the parties read the WCAC majority's opinion differently, and plaintiff does not agree that the majority held what defendant asserts it held. Defendant's characterization attaches the broadest possible meaning to the majority's statements, many of which were narrowed in other parts of the opinion. On the other hand, there is certainly language in the opinion to support defendant's interpretation, and defendant is correct that if understood at its broadest, the majority opinion misstates the law in parts. Nevertheless, it seems a useless exercise to debate whether the majority meant the reader to focus on its broad statements, or its narrow explanations of many of those statements, and we therefore direct our attention to the underlying issues.

A

MCL 418.301(4) provides: "As used in this chapter, "disability" means a limitation of an employee's wage

earning capacity in work suitable to his or her qualifi-
cations and training resulting from a personal injury or
work related disease. The establishment of disability
does not create a presumption of wage loss."

In *Sington, supra* at 155, our Supreme Court ex-
plained its interpretation of the first sentence of MCL
418.301(4) as follows:

> As this language plainly expresses, a "disability" is, in
> relevant part, a limitation in "wage earning capacity" in
> work suitable to an employee's qualifications and training.
> The pertinent definition of "capacity" in a common diction-
> ary is "maximum output or producing ability." *Webster's
> New World Dictionary* (3d College ed). Accordingly, the
> plain language of MCL 418.301(4) indicates that a person
> suffers a disability if an injury covered under the WDCA
> results in a reduction of that person's maximum reason-
> able wage earning ability in work suitable to that person's
> qualifications and training.
>
> So understood, *a condition that rendered an employee
> unable to perform a job paying the maximum salary*, given
> the employee's qualifications and training, *but leaving the
> employee free to perform an equally well-paying position
> suitable to his qualifications and training would not con-
> stitute a disability*. [Emphasis added.]

The *Sington* Court distinguished this interpretation
of MCL 418.301(4) from its prior definition of disability
in *Haske, supra* at 628:

> In *Haske, . . .* this Court concluded that § 301(4) defined
> disability as "a personal injury or work-related disease that
> prevents an employee from performing any work, even a
> single job, within his qualifications and training . . . ."
> Because of the words the Legislature used in § 301(4), the
> *Haske* definition of disability is untenable. The plain mean-
> ing of the definition of "disability" in § 301(4) as "a
> limitation of an employee's wage earning capacity in work
> suitable to his qualifications and training" precludes re-
> garding a person as disabled when an inability to perform

> one particular job does not, in fact, reduce that person's
> wage earning capacity in other, equally well-paying work
> suitable to his qualifications and training. Section 301(4)
> specifically directs the reader to a consideration of whether
> there is a limitation in wage earning capacity, not of
> whether a person is merely limited in performing one (or
> more) particular jobs. [*Sington, supra* at 158.]

Thus, *Sington*'s significance is that it clearly over-
ruled *Haske*. An employee's injury-related inability to
perform one or some of the jobs within the employee's
qualifications and training no longer establishes a dis-
ability. Rather, a finding of disability requires a deter-
mination that there is a limitation in an employee's
"overall, or in other words, maximum, wage earning
capacity in all jobs suitable to an injured employee's
qualifications and training." *Id.* at 159.

B

Nothing in *Sington* or in MCL 418.301(4) suggests
that "work suitable to that person's qualifications and
training" is limited to the claimant's resume or actual
jobs the defendant had performed in the past. To the
extent the WCAC majority so held, it erred. The lan-
guage used in *Sington* takes a broad view of an injured
employee's "qualifications and training," which is not
limited to the jobs on the employee's resume, but,
rather, includes any jobs the injured employee could
actually perform upon hiring. The *Sington* opinion
specifically directs the fact-finder to address "whether
there is a limitation in wage earning capacity" rather
than whether the injured employee "is merely limited
in performing one (or more) particular jobs." *Id.* at 158.
*Sington* referred to the Supreme Court's order in *Rea v
Regency Olds/Mazda/Volvo*, 450 Mich 1201 (1995).
*Sington, supra* at 156-157, 161. Among other directions,
the *Rea* order instructed the magistrate to develop the

record and make findings regarding "[w]hether Rea is qualified and trained for any work other than what he did for Regency Olds and Rod's, and, if so, what." *Rea, supra* at 1201. This language shows that the magistrate's determination of the injured employee's qualifications and training should not be limited only to those jobs the employee had previously performed.

On the other hand, to the extent the WCAC addressed the issue from the standpoint of the production of evidence, and held that as a practical matter, an employee's proofs will generally consist of the equivalent of the employee's resume—i.e., a listing and description of the jobs the employee held until the time of the injury, the pay for those jobs, and a description of the employee's training and education —and testimony that the employee cannot perform any of the jobs within his qualifications and training paying the maximum wage, the WCAC did not err. By producing such evidence, in addition to evidence of a work-related injury causing the disability, an employee makes a prima facie case of disability—a limitation in the employee's maximum wage-earning capacity in all jobs suitable to the employee's qualifications and training. The WCAC did not err in concluding that such a showing is adequate to establish disability in the absence of evidence showing that there is in fact real work within the employee's training and experience, paying the maximum wage, that the employee is able to perform upon hiring.

In this regard, we disagree with defendant's and the dissent's characterization of the magistrate's and WCAC's approach as placing the burden of proof on defendant employer to disprove disability. It is evident from his opinion, as we noted previously, that the magistrate clearly understood that the burden of proof

is on plaintiff to establish his disability as defined by *Sington*. Similarly, the WCAC, in analyzing the case in this fashion, did not place the burden of proof on defendant employer. Rather, the WCAC determined that when the employee's testimony and medical evidence establish that the employee is disabled from performing all the jobs the employee has performed or that are within his qualifications and training, the *Sington* standard is met, and unless the employer shows that, contrary to the employee's proofs, there are real jobs within the employee's qualifications and training that pay the maximum wage, disability is established.[3]

C

Further, to the extent the WCAC held that, as a matter of law, a transferable skills analysis is irrelevant in evaluating the employee's qualifications and training, it erred. A transferable skills analysis may yield credible testimony that there is actual employment that the employee's qualifications and training make the employee capable of performing upon hiring, although the employee has never performed it before. On the

---

[3] The WCAC stated, among other things:

> We begin with the observation that if the record demonstrates that the employee's qualifications and training consist of one job and he has gained no skills that would allow him to perform any other job, the inability to perform that one job is legally sufficient to establish that he is totally disabled from all work suitable to his qualifications and training. And if his qualifications and training consist of more than one job, the inability to perform all such jobs paying the maximum wages will demonstrate that he is disabled. But where qualifications and training consist of only one job or jobs that exist of a small or sharply defined skill set relative to all jobs extant in the labor force, there can be a convergence of the jobs the employee has held with those jobs suitable to his qualifications and training.

other hand, a particular transferable skills analysis may reach conclusions that are based on assumptions and speculation, and are not supported by the employee's actual qualifications and training or the realities of the workplace. In any particular case, the magistrate should be well able to discern the difference.

Similarly, the majority did not err in concluding that, in changing the interpretation of disability, *Sington* did not intend to make a transferable skills analysis (or a non-transferable skills analysis) a necessary part of the employee's proofs. An objective evaluation of the employee's past employment, skills, training, and education, measured against the employee's work-related physical limitations, will no doubt make it apparent to the parties and the magistrate whether, in any particular case, it is likely that there are jobs within the employee's qualifications and training that the employee is still able to perform, and the employee may, indeed, need to address these jobs and the pay associated with them in order to sustain his burden of proof. In such cases, the need for further proofs will arise from the extent of the employee's qualifications and training and the nature of the employee's disability, and not from theoretical arguments presented by the employer. In other cases, the employee's proofs will seem sufficient, and the existence of other jobs within the employee's qualifications and training will not be apparent. In such cases, the employer would be expected to establish facts on which to base a contrary conclusion. Such practical recognition does not change the allocation of the burden of proof; the burden of proof remains on the employee to show disability.

D

In the instant case, as the WCAC observed, the employee's qualifications and training were straightfor-

ward and limited, and his physical limitations were clear. There was no reason for the magistrate to conclude that there was additional work within plaintiff's qualifications and training that plaintiff was able to perform. In this regard, the WCAC majority's affirmance was well supported. *Mudel, supra.*

The dissent asserts that both the WCAC and the magistrate improperly limited the proofs and the *Sington* inquiry to plaintiff's employment history with defendant, rather than plaintiff's qualifications and training to perform any other work, and that reversal is therefore required. We disagree. Our reading of the record leads us to conclude that the magistrate understood the relevant question under *Sington,* and asked the proper question: whether plaintiff sustained his burden of establishing that he has a limitation in his maximum wage-earning capacity in work suitable to his qualifications and training. The magistrate never limited the inquiry to whether plaintiff could no longer do his job. The magistrate examined plaintiff's qualifications and training and came to the *factual* conclusion that his qualifications and training limited him to jobs driving a hi-lo and working in a warehouse, and "physically strenuous work from which he is clearly disabled." This conclusion was based on plaintiff's testimony concerning his prior jobs, his education and training, and defendant's failure to produce evidence showing that, contrary to plaintiff's proofs, there were, in fact, jobs within plaintiff's qualification or training that he could perform that would provide him with his maximum wage. This conclusion was amply supported by the record.

Similarly, we conclude that, notwithstanding the overly broad sweep of the WCAC majority opinion, the WCAC's evaluation of the instant case is supported by

the record and withstands review under the controlling standards. The majority reviewed the testimony and affirmed the magistrate on the same basis, concluding that plaintiff is totally disabled from all the jobs he held in the past, and there is "nothing in the record to suggest that plaintiff has the qualifications and training to perform *any other job* that pays wages equivalent, or greater than, to [sic] what he was earning for [sic] defendant." [Emphasis added.]

V

The WCAC concluded that the magistrate had no authority to order plaintiff to provide discovery to defendant in this matter. This was error.

A

In *Boggetta, supra,* the Workmen's Compensation Appeal Board found that the predecessor statute to MCL 418.851, MCL 413.8,[4] gave the workers' compensation magistrate power to grant discovery when necessary, explaining:

Section 8, part 3 of the workmen's compensation law provides that a referee assigned to any hearing "shall make such inquiries and investigations as it (he) shall deem necessary." This is broad general language consistent with the intent and purpose of the law and placing ultimate responsibility in the hearing officer to make such inquiries and investigations as may be necessary to determine whether or not an injured worker is entitled to benefits under the law. We do not believe the referee's responsibility to investigate is limited to personal detective work on his part. It is broad enough to require the answering of interrogatories requested by one of the parties if such

_____

[4] 1948 CL 413.8.

answers are necessary to a proper inquiry into the facts.
[*Boggetta, supra* at 603 (internal quotation omitted)].

Although it concluded that leave was improvidently granted for jurisdictional reasons, our Supreme Court effectively adopted the appeal board's interpretation of the law, stating that "[t]he hearing referee had full authority, by the statute quoted in the appeal board's ruling, to require that the defendant disgorge the requested information." *Id.* at 603-604.

The first sentence of MCL 418.851 currently states: "The worker's compensation magistrate *at the hearing* of the claim shall make such inquiries and investigations as he or she considers necessary." (Emphasis added.) The WCAC majority rejected *Boggetta* as authority for ordering discovery, concluding that the statutory provision on which it was based has since been amended to make clear that the provision relied on by the *Boggetta* Court refers to the magistrate's authority at the hearing, and also that the Court's statement was dictum. However, the Supreme Court's order to this Court in this case directing the grant of defendant's application specifically states "that *Boggetta v Burroughs Corp*, 368 Mich 600 [118 NW2d 980] (1962), remains controlling authority until reversed by this Court." *Stokes v DaimlerChrysler Corp*, 475 Mich 875, 876 (2006). Because *Boggetta* remains controlling authority, this Court and the WCAC must follow it. Under *Boggetta*, the magistrate had authority under MCL 418.851 to order discovery as necessary to allow a party to present its case.

On the other hand, the magistrate's authority is not derived from the broad discovery rules set forth in the Michigan Court Rules. Rather, the authority is limited to that which is "necessary to a proper inquiry into the facts." *Boggetta, supra* at 603. While the magistrate has

authority to grant relevant discovery that is necessary for defendant to develop a defense under *Sington*, it does not automatically follow that defendant is entitled to have its vocational expert interview plaintiff.[5] What form of discovery is necessary to enable a defendant to investigate an employee's qualifications and training and prepare a proper defense under *Sington* is a matter for the magistrate's discretion.

B

To the extent the WCAC concluded that the magistrate did not abuse his discretion in declining to order plaintiff to participate in the interview, that no need for an interview was shown in this case, and that defendant's inability to present a *Sington* defense at the hearing was due to its own failure to provide the expert with information prior to the hearing, we find the conclusions adequately supported by the record.[6] While

---

[5] While MCL 418.385 specifically provides for the examination of claimants by the employer's medical experts, there is no statutory counterpart specifically providing for discovery interviews by vocational experts, and the necessary information will often be available in the employee's records, or obtainable through interrogatories.

[6] The majority stated:

We are unable to discern any vocationally relevant information that Mr. Seal learned at the hearing that he could not have learned earlier. Under cross-examination at the hearing on remand, plaintiff was asked whether the prior decision properly listed all of his prior jobs at Chrysler [and confirmed that he held no other jobs] . . . .

* * *

Plaintiff's prior vocational experience 35 years ago, some of which was part-time, pales in comparison to his work for defendant. Plaintiff's hobbies—such as riding (not driving, it is to be noted) in a golf cart—do not seem to destine plaintiff for employment. The kind of work plaintiff performed for Chrysler, presum-

an interview will no doubt be appropriate in some cases, in the instant case defendant had sufficient information in the form of prior testimony, a long-term work history with defendant, and considerable medical information to narrow the focus of the additional information required so that it could be sought by interrogatory if necessary before trial, or obtained at trial to augment a preliminary transferable skills analysis based on the considerable information already available. In sum, we are satisfied, as were the magistrate and the WCAC, that defendant's inability to conduct the requested interview did not lead to its failure to present a viable

---

ably, did not come as a surprise to Chrysler. Plaintiff's restrictions were obtainable from the medical depositions taken long before.

* * *

At trial, defendant indicated that there was no reason to provide the vocational case manager "with any information, since—he would be unable to do anything more than what he has done here today." (Rem, 44) This was, however, not what Mr. Seal indicated. In response to a hypothetical question, Mr. Seal did not indicate he needed more information. He simply indicated that he needed to enter the information he has received into a computer. (Rem [,] 40).

It is our conclusion that, had Mr. Seal been given the information prior to the hearing that Chrysler that already possessed, he could have responded to the questions propounded to him without speculating. In another case, we suppose that information could have been disclosed at the hearing which would alter the response of the vocational case manager, but that is not this case and we are forced to leave that fact circumstance for another day.

We are simply not willing to attribute Mr. Seal's lack of information to the magistrate's failure to order plaintiff to meet with Mr. Seal. We do not doubt that it would have been more convenient for Mr. Seal to meet with plaintiff, but we expect that he would still be required to compare the information received directly from plaintiff with whatever information he developed by other means.

*Sington* defense. Rather, defendant hired an expert and then provided him with none of the information that was available to defendant, such as plaintiff's employment records and his prior testimony. As a result, the expert conducted none of the research that would be necessary to present a transferable skills analysis. It appears from the colloquy at trial that had the preliminary work been done with the available information, the magistrate would have permitted the expert time to integrate the additional information provided at trial into his opinion. The magistrate did not abuse his discretion in concluding that it was defendant's failure to properly pursue the issue with its expert, rather than the magistrate's prior denial of the request for an interview with plaintiff, that led to the failure to mount a viable *Sington* defense, and the WCAC did not err in affirming on this point. *Mudel, supra.*

VI

Defendant asserts that the WCAC erred as a matter of law by holding that plaintiff did not need to show that his loss of wages was caused by his work-related injury and resulting disability. The majority having concluded that "it is obvious that plaintiff lost wages as a result of his work-related medical impairment," its lengthy discussion of the issue was unnecessary and confusing, and is therefore vacated. Similarly, the majority's related discussion of the partial disability provisions is vacated for the same reason.

VII

Finally, we reject defendant's argument that the magistrate erred by refusing to adjourn the trial. Defendant sought to adjourn the hearing so that its vocational expert could review plaintiff's trial testi-

mony and prepare an opinion regarding the possibility of plaintiff's future employment based on that testimony. The magistrate denied defendant's motion to adjourn after determining that the expert had been retained only five days before trial, had not been provided with any of the deposition testimony, and had not been provided with plaintiff's employment records. Under these circumstances, we cannot say that the magistrate abused his discretion by refusing to adjourn the proceedings, or that the WCAC was without basis for agreeing that the adjournment was properly denied.

The result reached by the WCAC's majority opinion en banc is affirmed. The opinion is vacated to the extent inconsistent with this opinion.

JANSEN, J., concurred.

SAAD, P.J. *(dissenting)*. I respectfully dissent because of the numerous legal errors in the Workers' Compensation Appellate Commission's (WCAC's) en banc opinion. Though I agree with the majority's conclusion that the WCAC's majority opinion contains several misstatements of law, I disagree with the majority's ruling that the result reached here should nevertheless be affirmed. Because the commission's and the magistrate's actions in this case repudiated our Supreme Court's holding in *Sington v Chrysler Corp*, 467 Mich 144; 648 NW2d 624 (2002), and effectively prevented defendant from preparing and presenting a defense under *Sington*, I would reverse the WCAC decision and remand this matter to the magistrate.

### DEFINITION OF DISABILITY

The WCAC clearly erred in its ruling that "work suitable to that person's qualifications and training" under MCL 418.301(4) and *Sington* is limited to the

jobs the claimant performed, without reference to whether the claimant possessed any other "transferable" skills by which he could earn wages. Contrary to *Sington,* both the WCAC and the magistrate improperly limited this pivotal inquiry to plaintiff's employment history with defendant rather than the plaintiff's qualification and training to perform any other work. I disagree with the majority's "harmless error" conclusion that "[i]n the instant case ... the employee's qualifications and training were straightforward and limited," see *ante* at 591-592, because the WCAC used the wrong legal definition of disability and defendant was denied a meaningful opportunity to discover evidence and present proofs regarding plaintiff's actual qualifications and training.

### DISCOVERY

Also, the WCAC erred by ruling that the magistrate had no authority to order plaintiff to provide discovery to defendant. Clearly, the WCAC erred as a matter of law by upholding the magistrate's refusal to order discovery because, under *Boggetta v Burroughs Corp,* 368 Mich 600; 118 NW2d 980 (1962), the magistrate had authority to order discovery to allow a party to prepare and present its case. This issue was neither fully argued nor fully developed, because the magistrate and the WCAC erred as a matter of law regarding defendant's right to discovery. Accordingly, it is appropriate and necessary to reverse and remand this matter to the magistrate, with directions to order discovery reasonably necessary to allow defendant to prepare its defense under *Sington.*

### CAUSAL CONNECTION

Further, the WCAC's statements regarding whether plaintiff needed to show loss of wages were also incor-

rect, unnecessary, and confusing, and constitute legal error. Even if plaintiff proves both a work-related injury and the loss of wage-earning capacity, he must also show that his work-related injury *caused* his current loss of wage-earning capacity pursuant to MCL 418.301(4). *Sweatt v Dep't of Corrections*, 468 Mich 172, 186; 661 NW2d 201 (2003) ("there must be a linkage between the disabling work-related injury and the reduction in pay"). This is a fundamental part of plaintiff's proofs under the act.

### BURDEN OF PROOF

Finally, I disagree with the majority's analysis regarding defendant's argument that the WCAC erroneously concluded that defendant-employer bore the burden of disproving disability under *Sington* by affirmatively proving the existence of jobs within the injured employee's qualifications and training. It is well established that the plaintiff in a workers' compensation matter must establish his work-related disability and entitlement to benefits by a preponderance of the evidence. MCL 418.851; *Aquilina v Gen Motors Corp*, 403 Mich 206, 211; 267 NW2d 923 (1978). This broad burden of proof includes the burden of showing disability under *Sington* and the Supreme Court's order in *Rea v Regency Olds/Mazda/Volvo*, 450 Mich 1201 (1995). The *Rea* order specifically states that "the 1987 definition of disability in the Worker's Disability Compensation Act [the present version of § 301(4)] *requires a claimant* to demonstrate how a physical limitation affects wage-earning capacity in work suitable to the claimant's qualifications and training."[1] *Id.* (emphasis

---

[1] Though the defendant-employer may have the obligation to provide or pay for vocational rehabilitation services under MCL 418.319, nothing

added). Because the WCAC committed a clear error of
law by concluding otherwise, we should reverse.

---

in § 319 or any other provision in the act suggests that the burden of
proving the existence of work within the claimant's qualifications,
training, and current physical abilities somehow shifts to the defendant.