**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED JUNE 12, 2008

FREDIE STOKES,

   Plaintiff-Appellee,

v                                                         No. 132648

CHRYSLER LLC, formerly known as
DAIMLERCHRYSLER CORPORATION,

   Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

   We heard oral argument on defendant employer's application for leave to appeal to consider whether the burden-shifting analysis articulated by the Court of Appeals relieved claimant of the burden of proving that he was disabled from all jobs paying the maximum wages within his qualifications and training, as required by *Sington v Chrysler Corp,* 467 Mich 144; 648 NW2d 624 (2002). A workers' compensation claimant bears the burden of proving that he has a disability under MCL 418.301(4), and that burden does not shift to the employer. MCL 418.851. The claimant must show more than a mere inability to perform a previous job.

Once the claimant proves that he is disabled from all jobs within the claimant's qualifications and training, the burden of production shifts to the employer contesting the claim to come forward with evidence to challenge the claimant's proof of disability, and the employer is entitled to discovery before the hearing to enable the employer to meet this production burden. Here, claimant did not sustain his burden of proving by a preponderance of the evidence that he was disabled from all jobs within his qualifications and training. However, given the inconsistent application of the *Singon* standard in the past, we believe that it would be equitable to allow claimant an opportunity to present his proofs with the guidance provided by this opinion. Accordingly, we reverse the Court of Appeals in part and remand the matter to the magistrate for a new hearing consistent with the procedures set forth in this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Claimant was a forklift driver for the employer from 1971 to 1999. During his last five years, claimant drove a forklift for about five hours a day and performed dispatch work by entering automotive part numbers on a keyboard or relaying information over the telephone the rest of the day. Claimant increasingly felt pain in his neck and arms until he could no longer work in the fall of 1999. Claimant's physician opined that claimant's physical activity at work caused repetitive trauma to his cervical spine and aggravated his existing rheumatoid arthritis. On February 15, 2000, claimant had surgery on his cervical spine.

Claimant filed a petition for workers' compensation benefits based on a cervical spine disability. Both experts agreed that claimant was totally disabled from his job, but the employer's expert asserted that the sole cause of the disability was claimant's preexisting rheumatoid arthritis. The magistrate granted claimant an open award of benefits, relying on *Haske v Transport Leasing, Inc, Indiana*, 455 Mich 628, 662; 566 NW2d 896 (1997), which defined "disability" as an injury that prevents the employee from performing any single job within his qualifications and training. The Workers' Compensation Appellate Commission (WCAC) affirmed the finding that claimant's disability was work-related, but remanded the case to the magistrate for reconsideration of the disability issue under the standard set forth in *Sington*, which overruled *Haske* during the pendency of this case.

Before the remand hearing, the employer filed a motion to compel claimant to submit to an interview by the employer's vocational rehabilitation counselor, but the magistrate denied the motion. At the remand hearing, the employer's vocational expert stated that he could not testify with regard to claimant's wage-earning capacity because he needed to complete a 'transferable-skills' analysis but had not met with claimant and had only been retained four days before the hearing. Defense counsel requested an adjournment or continuance to allow the vocational expert to perform the analysis. The magistrate denied the employer's motion to adjourn because the employer had failed to provide its expert with any of the information already in the employer's possession.

3

At the remand hearing, claimant testified that he had graduated from high school but had no vocational training. Claimant attended college for brief periods both before and during his employment with the employer, but did not obtain a degree or certification. He had no typing or computer skills, and his only jobs before working for the employer consisted of driving a forklift for a refrigerator warehouse and stocking supplies and materials. Claimant had not worked since leaving his employment with the employer. The magistrate determined that claimant met the *Sington* standard for disability and again granted claimant an open award of benefits.

The WCAC affirmed, concluding that a claimant's qualifications and training consist of the claimant's previous jobs, how much the jobs paid, and the training the claimant received at those jobs. The WCAC stated that the claimant was not required to show other skills he possessed that might transfer to another job. The WCAC also concluded that the magistrate had not abused his discretion in denying the employer's request for an adjournment and that the magistrate did not have the authority to compel claimant to meet with the vocational expert.

The employer sought leave to appeal in the Court of Appeals, but also sought bypass review in this Court. We entered an order denying the bypass application, but directing the Court of Appeals to grant the application and issue its opinion by October 1, 2006. The order stayed the WCAC's opinion and stated

4

that *Boggetta v Burroughs Corp*, 368 Mich 600; 118 NW2d 980 (1962),[1] remained controlling authority. 475 Mich 875 (2006).

The Court of Appeals, in a split decision, affirmed the award of benefits, but vacated several portions of the WCAC opinion that were inconsistent with *Sington* and *Boggetta*, in particular discussions regarding loss of wages and partial disability. *Stokes v DaimlerChrysler Corp*, 272 Mich App 571, 588, 593-594, 597; 727 NW2d 637 (2006). The Court of Appeals held that suitable work "is not limited to the jobs on the employee's resume, but, rather, includes any jobs the injured employee could actually perform upon hiring." *Id*. at 588. However, the Court of Appeals then decided that the WCAC had not erred in holding that, "as a practical matter, an employee's proofs will generally consist of the equivalent of the employee's resume" and held that such proofs "in addition to evidence of a work-related injury causing the disability" were adequate to establish a "prima facie case of disability." *Id*. at 589. The "prima facie case," in turn, was adequate to establish a compensable disability *unless* the employer established the existence of real jobs within the employee's training and experience that paid the maximum wage. *Id*. at 590. The Court of Appeals further stated that a transferable-skills analysis could be relevant in evaluating the claimant's qualifications and training,

_____

[1] In *Boggetta*, *supra* at 603, this Court quoted with approval the opinion of the Workmen's Compensation Appeal Board (WCAB), which stated that a hearing referee's responsibility is "'broad enough to require the answering of interrogatories requested by one of the parties if such answers are necessary to a proper inquiry into the facts.'"

5

but was not required. *Id*. at 590-591. Finally, the Court of Appeals held that the magistrate possessed the authority to order discovery, but had not abused his discretion in concluding that an interview was unnecessary in this case because the employer had sufficient information in the form of prior testimony to give to the vocational expert. *Id*. at 593-597.

The dissenting judge would have reversed the WCAC decision and remanded to the magistrate because the latter's actions "effectively prevented defendant from preparing and presenting a defense," the inquiry into whether claimant possessed any other transferable skills was improperly limited by considering only claimant's employment history, and the WCAC erroneously concluded that the employer had the burden of proving the existence of jobs within the claimant's qualifications and training. *Id*. at 598-601.

The employer sought leave to appeal in this Court. We directed the clerk to schedule oral argument on whether to grant the application or to take other peremptory action. 477 Mich 1097 (2007).

## II. STANDARD OF REVIEW

Findings of fact made by the WCAC are conclusive in the absence of fraud. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 701; 614 NW2d 607 (2000). We review de novo questions of law in final orders of the WCAC. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

## III. ANALYSIS

## A. BURDEN OF PROOF TO ESTABLISH A DISABILITY

A claimant under the Worker's Disability Compensation Act (WDCA) must prove his entitlement to compensation and benefits by a preponderance of the evidence. MCL 418.851; *Aquilina v Gen Motors Corp*, 403 Mich 206, 211; 267 NW2d 923 (1978). MCL 418.301(4) provides:

> As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.[2]

*Rea v Regency Olds/Mazda/Volvo,* 450 Mich 1201, 1201 (1995), addressed the burden of proof required to establish a disability:

> It is not enough for the claimant claiming partial disability to show an inability to return to the same or similar work. If the claimant's physical limitation does not affect the ability to earn wages in work in which the claimant is qualified and trained, the claimant is not disabled.

*Haske, supra* at 662, overruled *Rea*, stating: "Where the employee has carried his burden of proving wage loss, he will, as a practical matter, have proven that he is unable to perform a single job within his qualifications and training, and, therefore, that he is disabled."

---

[2] We do not address the issue of wage loss in this opinion, which, under MCL 418.301(4), is an issue entirely separate from the establishment of disability. Once a plaintiff makes a prima facie showing of disability, the plaintiff must also prove a wage loss. *Sington, supra* at 160 n 11.

Subsequently, MCL 418.301(4) was examined thoroughly in *Sington, supra* at 155-159:

> As this language plainly expresses, a "disability" is, in relevant part, a limitation in "wage earning capacity" in work suitable to an employee's qualifications and training. The pertinent definition of "capacity" in a common dictionary is "maximum output or producing ability." *Webster's New World Dictionary* (3d College ed). Accordingly, the plain language of MCL 418.301(4) indicates that a person suffers a disability if an injury covered under the WDCA results in a reduction of that person's maximum reasonable wage earning ability in work suitable to that person's qualifications and training.
>
> So understood, a condition that rendered an employee unable to perform a job paying the maximum salary, given the employee's qualifications and training, but leaving the employee free to perform an equally well-paying position suitable to his qualifications and training would not constitute a disability.
>
> * * *
>
> [T]he language of § 301(4) requires a determination of overall, or in other words, maximum, wage earning capacity in all jobs suitable to an injured employee's qualifications and training.

*Sington, supra* at 161, continued by explicitly overruling the burden of proof set forth in *Haske* because it was inconsistent with MCL 418.301(4). At the same time, *Sington, supra* at 156-157, 161, reinstated the prior ruling of *Rea*, concluding that the procedure established in *Rea* was harmonious with the statute.

Thus, the standard for establishing a prima facie case of disability under *Sington* requires that the claimant prove a work-related injury, and that injury must result in a reduction of the claimant's maximum wage-earning capacity in work suitable to his qualifications and training. *Sington*, *supra* at 155. The WCAC has struggled in consistently applying this standard since *Sington*.

8

B. BURDEN OF PROOF SINCE *SINGTON*

Since *Sington*, lower courts and tribunals have closely analyzed a claimant's burden of proof, but the application of that standard has arguably been inconsistent. In *Kethman v Lear Seating Corp*, 2003 Mich ACO 205, p 6, the WCAC interpreted *Sington* to require the claimant to demonstrate

> 1. his work qualifications and training, and what jobs they translate to, and
>
> 2. that he has a work-related physical or mental impairment which does not permit him to perform jobs within his qualifications and training and that he has lost wages, and
>
> 3. that he is either unable to perform or cannot obtain employment at all those jobs within his qualifications and training that pay his maximum income, which are reasonably available.

The WCAC then stated that, after the claimant proves these three factors, the burden of going forward shifts to the employer, which may present evidence that there were jobs within the claimant's qualifications, training, and physical limitations that were reasonably available. *Id*. at 7. This analysis, in our judgment, constitutes an accurate summation of the *Sington* standard.

In *Peacock v Gen Motors Corp*, 2003 Mich ACO 274, p 19, the WCAC sought to define "qualifications and training," stating that this phrase encompasses formal education, work experience, special training, skills, and licenses. In addition, the WCAC described "suitable" jobs as a phrase that did not delimit the universe of potential jobs, but, rather, included "those jobs that afford a plaintiff an opportunity for consideration to be hired because he possesses the minimum

9

experience, education, and skill." *Id*. at 20. The WCAC's definitions, in our judgment, again constitute accurate summations of these terms.

In *Riley v Bay Logistics, Inc*, 2004 Mich ACO 27, p 7, the WCAC attempted to harmonize existing caselaw by summarizing the *Sington* factors required to prove a threshold disability as follows:

> 1.   Has plaintiff established the universe of jobs for which he is qualified and trained, and how much do they pay?
>
> 2.   Has plaintiff established his work related physical or mental impairment, which does not permit him or her to perform jobs within his qualifications and training causing him to lose wages?
>
> 3.   Has plaintiff established that he was either unable to perform (or obtain because such jobs were not reasonably available) all the jobs within his qualifications and training that pay his maximum wage (for the purpose of establishing his Section 301(4) threshold disability).

The WCAC also concluded that once the claimant establishes a prima facie case of disability, the burden of persuasion shifts to the employer. *Id*.

Numerous WCAC opinions have quoted the tests set forth in *Kethman* and *Riley*. However, these opinions have not always been consistent in their application of the *Sington* standard. There is a tendency to properly set forth the *Sington* standard, but then to apply the standard in a manner that effectively constitutes a reversion to *Haske*. One example is *Riley* itself, in which *Sington* was applied in a similar manner to that which occurred in the instant case.

While *Riley* scrupulously analyzed the *Sington* standard of proof, the application of that standard was less compelling. For example, the WCAC

10

determined that the claimant's work-related physical restrictions precluded him from performing each job that he had done in the past. *Riley*, *supra* at 6, 8. Taking into account that the claimant had only a ninth-grade education and lacked formal training, the WCAC concluded that the claimant was unable to perform any job within his qualifications. *Id.* The WCAC then inferred that the claimant had thereby established that he could no longer perform the jobs that paid the maximum wage that may have been available. *Id.* at 8. However, the WCAC opinion did not discuss the possibility that the claimant possessed any skills that could transfer to other job fields. In addition, there was no evidence presented regarding the availability of other jobs or the claimant's job search efforts.

The WCAC continued to address the application of the *Sington* standard in *Bacon v Bedford Pub Schools*, 2005 Mich ACO 47. The WCAC stated that a claimant carries the burden of establishing which jobs fall within the claimant's qualifications and training. *Id.* at 3. However, the WCAC determined that, because of the claimant's limited education and lack of job training, her testimony regarding her work history, education, and physical condition was sufficient to establish the universe of jobs that the claimant was qualified and trained to perform. *Id.* at 4, 7. This analysis, we believe, effected a reversion to the *Haske* standard in the name of *Sington*.

Similarly, in *Higgins v Delphi Automotive Sys*, 2005 Mich ACO 136, p 2, the claimant had testified at the hearing regarding her education, work experience, and inability to return to any of her previous jobs because of her work-related

injury. The magistrate found that the claimant's job as an unskilled industrial production worker defined her universe of jobs because her previous jobs had been too remote to be significant. *Id*. The magistrate concluded that the claimant was disabled because her injury precluded her from performing any of the jobs she had done in the past for the same employer. *Id*. at 3. The WCAC affirmed, stating that the magistrate had found credible the claimant's testimony that she was "unable to perform any of the jobs she previously had with defendant." *Id*. at 5. Again, the WCAC effectively reverted to the *Haske* standard in describing the burden of proof.

On the other hand, in *Stanton v Great Lakes Employment*, 2003 Mich ACO 129, pp 2-3, the claimant's work-related injury precluded him from being able to perform most of his previous jobs because they required him to stand all day. However, the claimant had applied for an estimated 50 jobs, some of which were the types of jobs he had performed in the past, and others were jobs that he had never performed. *Id*. at 1-2. The claimant had also contacted the previous employer from which he had earned his highest pre-injury wages but received no offer. *Id*. at 4. The WCAC determined that the claimant had satisfied the threshold level of disability on the basis of the following factors: the severity of the claimant's injury; that most of his training and qualifications required significant standing and walking; that the claimant had proved his desire to return to work by applying for an estimated 50 jobs; that the claimant had not been offered employment by his employer or another employer; that the employer had

not accommodated the claimant's physical restrictions; and that no job had been made known to him for which he failed to apply. *Id.* at 3. The burden of going forward then shifted to the employer, which produced no evidence that there were actual jobs available at the maximum wage within the claimant's qualifications and training. *Id.* at 4. *Stanton*'s application of the *Sington* standard represented a much more accurate and thorough analysis than the analyses of previous cases.

In *Nowak v East Lansing*, 2005 Mich ACO 83, pp 1-2, the claimant was a patrol officer who suffered a work-related injury to her knee. The WCAC stated that the magistrate's finding that the claimant's work-related injury prevented her from working as a patrol officer did not establish a disability under *Sington*. *Id.* at 4. The claimant had continued to work full-time as the head of the parking enforcement unit for the employer and received her full salary. *Id.* at 4, 8. The WCAC remanded to the magistrate to determine whether the claimant's new position fell within her qualifications and training, whether it constituted "a regular job for which there was a substantial job market," and whether the job paid the maximum salary. *Id.* at 8. If so, then the claimant would not be able to satisfy the definition of "disability" under *Sington*. *Id.* Again, this analysis comports with the standard set forth in *Sington*. If the employer was paying the claimant her full salary because the new job merited that salary, rather than as an accommodation for her injury, then the claimant had not suffered a loss in wage-earning capacity.

*Stanton* and *Nowak* represent accurate summations of what is required in the application of *Sington* to the facts of a WDCA case. A claimant must do more than demonstrate that his work-related injury prevents him from performing a previous job. *Sington*, *supra* at 161. It is insufficient to merely articulate the *Sington* standard and then overlook necessary steps in its application. Rather, MCL 418.301(4) requires that the claimant prove a limitation in "wage earning capacity in work suitable to his qualifications and training resulting from a personal injury or work related disease" to establish a prima facie case of disability. Therefore, the claimant must first prove a work-related injury. *Sington*, *supra* at 155. Second, that injury must result in a reduction of the claimant's wage-earning capacity in work suitable to his qualifications and training. *Id*. After reviewing the inconsistencies in the WCAC opinions since *Sington*, we set forth the following practical application of the *Sington* standard in this case.

First, the injured claimant must disclose his qualifications and training. This includes education, skills, experience, and training, whether or not they are relevant to the job the claimant was performing at the time of the injury. It is the obligation of the finder of fact to ascertain whether such qualifications and training have been fully disclosed.

Second, the claimant must then prove what jobs, if any, he is qualified and trained to perform within the same salary range as his maximum earning capacity at the time of the injury. *Sington*, *supra* at 157. The statute does not demand a transferable-skills analysis and we do not require one here, but the claimant must

14

provide some reasonable means to assess employment opportunities to which his qualifications and training might translate. This examination is limited to jobs within the maximum salary range. There may be jobs at an appropriate wage that the claimant is qualified and trained to perform, even if he has never been employed at those particular jobs in the past. *Id.* at 160. The claimant is not required to hire an expert or present a formal report. For example, the claimant's analysis may simply consist of a statement of his educational attainments, and skills acquired throughout his life, work experience, and training; the job listings for which the claimant could realistically apply given his qualifications and training; and the results of any efforts to secure employment. The claimant could also consult with a job-placement agency or career counselor to consider the full range of available employment options. Again, there are no absolute requirements, and a claimant may choose whatever method he sees fit to prove an entitlement to workers' compensation benefits. A claimant sustains his burden of proof by showing that there are no reasonable employment options available for avoiding a decline in wages.

We are cognizant of the difficulty of placing on the claimant the burden of defining the universe of jobs for which he is qualified and trained, because the claimant has an obvious interest in defining that universe narrowly. Nonetheless, this is required by the statute. Moreover, because the employer always has the opportunity to rebut the claimant's proofs, the claimant would undertake significant risk by failing to reasonably consider the proper array of alternative

available jobs because the burden of proving disability always remains with the claimant. The finder of fact, after hearing from both parties, must evaluate whether the claimant has sustained his burden.

Third, the claimant must show that his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages. *Id*. at 158.

Fourth, if the claimant is capable of performing any of the jobs identified, the claimant must show that he cannot obtain any of these jobs. The claimant must make a good-faith attempt to procure post-injury employment if there are jobs at the same salary or higher that he is qualified and trained to perform and the claimant's work-related injury does not preclude performance.

Upon the completion of these four steps, the claimant establishes a prima facie case of disability. The following steps represent how each of the parties may then challenge the evidence presented by the other.

Fifth, once the claimant has made a prima facie case of disability, the burden of production shifts to the employer to come forward with evidence to refute the claimant's showing. At the outset, the employer obviously is in the best position to know what jobs are available within that company and has a financial incentive to rehabilitate and re-employ the claimant.

Sixth, in satisfying its burden of production, the employer has a right to discovery under the reasoning of *Boggetta* if discovery is necessary for the employer to sustain its burden and present a meaningful defense. Pursuant to

16

MCL 418.851 and MCL 418.853,[3] the magistrate has the authority to require discovery when necessary to make a proper determination of the case. The magistrate cannot ordinarily make a proper determination of a case without becoming fully informed of all the relevant facts. If discovery is necessary for the employer to sustain its burden of production and to present a meaningful defense, then the magistrate abuses his discretion in denying the employer's request for discovery. For example, the employer may choose to hire a vocational expert to challenge the claimant's proofs. That expert must be permitted to interview the claimant and present the employer's own analysis or assessment. The employer may be able to demonstrate that there are actual jobs that fit within the claimant's qualifications, training, and physical restrictions for which the claimant did not apply or refused employment.

Finally, the claimant, on whom the burden of persuasion always rests, may then come forward with additional evidence to challenge the employer's evidence.

This precise sequence is not rigid, but rather identifies the nature of the proofs that must precede the fact-finder's decision. Should it become evident in a particular case that a different sequence is more practical, the parties may present their evidence accordingly. However, the magistrate must ensure that all steps are

---

[3] MCL 418.851 provides, in pertinent part, that "[t]he worker's compensation magistrate at the hearing of the claim shall make such inquiries and investigations as he or she considers necessary." MCL 418.853 allows the magistrate to "administer oaths, subpoena witness, and to examine [] parts of the books and records. . . ."

completed in some fashion or another, that all the facts necessary to the determination of the case are presented, that each side has been accorded an adequate opportunity to respond to the other's proofs, and that the statutory burden of proof is respected. After that point, the magistrate can properly determine whether the claimant has satisfied his obligations under MCL 418.301(4).

We reiterate that MCL 418.851 places the burden of proof on the claimant to demonstrate his entitlement to compensation and benefits by a preponderance of the evidence. This burden of persuasion never shifts to the employer, although the burden of production of evidence may shift between the parties as the case progresses. Because a claimant does not prove a "disability" under MCL 418.301(4) by merely demonstrating the inability to perform any previous jobs, the burden remains on the claimant to demonstrate that there are no available jobs within his qualifications and training that he can perform. Only after the claimant has first sustained this statutory burden of proof does the burden of production shift to the employer to show that there are jobs that the claimant can perform.

## C. APPLICATION OF *SINGTON* STANDARD

The WCAC's determination that claimant proved a work-related injury is conclusive because there is no evidence of fraud. *Mudel*, *supra* at 701. At issue is only whether claimant sustained his burden of proving that his work-related injury effected a reduction of his maximum wage-earning capacity in work suitable to his qualifications and training. Because this is a question of law, we review this issue de novo. *DiBenedetto, supra* at 401.

18

We hold that claimant did not satisfy his burden of establishing a disability. Claimant's demonstration that he could no longer perform his job because of a work-related injury was simply insufficient to establish a "disability" under MCL 418.301(4). In holding to the contrary, we believe that the Court of Appeals and the WCAC short-circuited the requirements of *Sington* and effected a reversion to *Haske*.

Under *Sington*, claimant was required to demonstrate that the injury to his cervical spine limited his maximum wage-earning capacity in work suitable to his qualifications and training. Claimant merely testified regarding his employment and educational background. Claimant presented no evidence that he had even considered the possibility that he was capable of performing any job other than driving a forklift. Likewise, the lower court, the magistrate, and the tribunal seemingly assumed that because claimant had driven a forklift for so many years, that was all he was able to do and that he had acquired no additional skills throughout his life that might translate to other positions of employment. At a minimum, claimant was required by the WDCA to show that he had considered other types of employment within his qualifications and training that paid his maximum wages and that he was physically unable to perform any of those jobs or unable to obtain those jobs. There is no evidence in this case that claimant sought *any* post-injury employment or would have been willing to accept such employment within the limits of his qualifications, training, and restrictions.

The Court of Appeals opinion effectively relieved claimant of this burden of proof by concluding:

> [T]o the extent the WCAC addressed the issue from the standpoint of the production of evidence, and held that as a practical matter, an employee's proofs will generally consist of the equivalent of the employee's resume—i.e., a listing and description of the jobs the employee held up until the time of the injury, the pay for those jobs, and a description of the employee's training and education— and testimony that the employee cannot perform any of the jobs within his qualifications and training paying the maximum wage, the WCAC did not err. By producing such evidence, in addition to evidence of a work-related injury causing the disability, an employee makes a prima facie case of disability—a limitation in the employee's maximum wage-earning capacity in all jobs suitable to the employee's qualifications and training. The WCAC did not err in concluding that such a showing is adequate to establish disability in the absence of evidence showing that there is in fact real work within the employee's training and experience, paying the maximum wage, that the employee is able to perform upon hiring. [*Stokes*, *supra* at 589.]

By finding that claimant had met his burden of proof under *Sington*, in the absence of evidence concerning other jobs for which he might have been qualified, the Court of Appeals suggested strongly that the burden of showing the existence of such jobs is on defendant. It is not.

In this case, claimant did not meet his burden of proving a disability under the WDCA because he only presented evidence of an inability to perform his prior job. However, even if claimant met his burden, the employer was effectively denied the opportunity to rebut claimant's proofs. The employer's pre-trial request to have claimant interviewed by the employer's vocational expert was denied. The employer renewed this request at the remand hearing, but this request

was also denied. Because claimant refused to meet with the employer's vocational expert, and the magistrate was unwilling to compel an interview, the employer's vocational expert could only provide speculative testimony regarding the effect of claimant's injury on his wage-earning capacity. The employer's expert testified that, after interviewing claimant, he would have completed a transferable-skills analysis based on claimant's profile and work restrictions. Next, the employer's expert would have contacted potential employers to determine job availability and wages for any jobs falling within claimant's qualifications, training, and restrictions. The employer requested an adjournment or continuance to allow its expert to perform this analysis, but that request was also denied.

The employer was essentially denied the opportunity to ascertain claimant's ability to perform other jobs. Not only did the magistrate's ruling deprive the employer of the ability to present evidence of actual jobs in the marketplace that claimant could have obtained, but the employer was deprived of the ability to assess whether there were any jobs available within its *own* company that claimant could perform. While the employer was in the best position to know which openings were available within its company, it was not in a position to know all the skills and training claimant had acquired throughout his life that might be compatible with one of the jobs available. The employer was entitled to discovery

21

before the hearing to enable it to meet its burden of coming forward with evidence to rebut claimant's claim of disability.[4]

## IV. RESPONSE TO THE DISSENT

The WDCA establishes a careful balance between the employee's interest in receiving compensation when he suffers a disability as a result of a work-related injury and the employer's interest in avoiding legally unsound workers' compensation claims. This Court's role is to avoid upsetting this balance in favor of either party and to ensure that the standards and preconditions for benefits established by the law are maintained. The dissent disregards this law and substitutes its own sense of the balance between the employer and the employee for that of the Legislature.

However, the preferences of the dissent notwithstanding, MCL 418.301(4) requires a workers' compensation claimant to demonstrate a *limitation* or

---

[4] The procedures set forth in this opinion are more consistent with *Singing* than the procedures of the Court of Appeals, and *Singing* is more consistent with the statute than is *Haske*. Moreover, it must be said, although it does not influence this opinion, that the procedures set forth here will almost certainly lead to a far more efficient use of human and economic resources in Michigan than the procedures introduced by this Court in *Haske*. Injured employees who are able to continue to work will be encouraged to do so instead of having their skills wasted, workers' compensation costs will be reduced for employers, and the competitiveness of Michigan as a workplace with other states will be enhanced. Not only does the dissent misconstrue these observations by ignoring our prefatory language, *post* at 23 and n 18, but one cannot help but glean from the dissent a sense that it is somehow better that a person who, while unable to perform Job A as a result of a workplace injury, could perform Job B at an equivalent compensation should be encouraged not to do so, thereby imposing higher workers' compensation costs on his employer. To what conceivable end?

22

*reduction* in wage-earning capacity. This provision defines a workers' compensation "disability" to mean a "limitation of an employee's wage earning capacity in work suitable to his qualifications and training resulting from a personal injury or work related disease." Thus, to be compensable, something more than an injury is required; specifically, the injury must result in a "limitation of [the] employee's wage earning capacity" in work for which that employee is suited. Instead of taking this language at face value, the dissent remains wedded to the proposition set forth in *Haske,* and rejected in *Sington,* that a claimant may demonstrate a disability merely by showing an inability to perform a *single* job within his qualifications or training. Whatever the merits of this standard, it is simply not the standard that our Legislature has adopted. In today's decision, we reiterate *Sington*'s holding and impose no new requirements on any workers' compensation claimant. We attempt only to afford guidance in the application of *Sington* so that future claimants and employers will have the benefit of a consistent and workable standard in assessing their rights and obligations under the law.

Additionally, the employer is entitled to challenge the claimant's evidence in support of a workers' compensation claim, it is entitled to have the burden of proof in a workers' compensation claim remain with the claimant, and it is entitled to secure evidence in its own behalf. In other words, the employer is entitled to avail itself of the law.

The dissent asserts, first, that the majority has indulged in "judicial creativity" to "effectively" require that a claimant provide a transferable-skills analysis in order to evidence a disability. *Post* at 2-4. Contrary to this assertion, such an analysis does *not* constitute a requirement on the part of a claimant. While the claimant must present *some* manner of assessment of alternative employment opportunities to which his qualifications and training might, or might not, translate-- precisely to demonstrate that the injury has, in fact, "limited" his wage-earning capacity-- this showing need not be in any particular form. The claimant must simply demonstrate in light of his injury that there are no reasonable employment options for avoiding a diminution in wages. If there *are* such options, a claimant's wage-earning capacity has obviously not been "limited," and he is not entitled to benefits; if there are *not* such options, then the claimant's wage-earning capacity has equally obviously been limited, and he is entitled to benefits. This all makes eminent sense. There is nothing to be compensated for-- at least not in terms of wage reduction-- if there has been no reduction in the claimant's ability to earn his maximum wages. Most people would not find this to be a very problematic understanding; only the dissent sees the sky falling. *Sington* requires nothing more than the kind of inquiry in which any reasonable person would engage if he became injured *outside* the workplace and could no longer perform his job. Such a person would naturally inquire, "Is there another job in which I am employable at a similar wage?" Because the dissent considers this too onerous a burden, it would simply read out of the statute any obligation of the

claimant to demonstrate a *limitation* or *reduction* in his wage-earning capacity. The dissent demonstrates no alternative means by which a reduction in wage-earning capacity can be measured than by actually looking to see whether there are other jobs for which a claimant is qualified.[5]

Claimant here presented no evidence that he considered whether there were any other jobs paying appropriate wages that he could perform, and for this reason his proofs were deficient. Nonetheless, the dissent repeatedly, and confidently, asserts that claimant cannot perform any other job for which he is qualified. It is unclear how the dissent could possibly make this assertion so assuredly. Does the dissent have access to secret information denied the rest of this Court? How can the dissent be certain that claimant cannot perform any other job when *neither* party has presented evidence to this effect? While the dissent may well be proven correct in the end, there is simply no basis in the present record for making this declaration. There is no way of knowing whether claimant is entitled to benefits until the correct legal standards have been applied, and these standards cannot be applied until the claimant has introduced evidence concerning his wage-earning

---

[5] The dissent compares the general language of MCL 418.301(4) with the more specific language of MCL 418.385 to conclude that MCL 418.301(4) does not require affirmative proofs to demonstrate a limitation in wage-earning capacity. This conclusion is illogical. The Legislature used specific language in MCL 418.385 to require a claimant to submit to a medical examination. It does not follow that every other provision of the statute must use similarly specific language when more general language will suffice. In stating that the claimant must demonstrate a reduction in wage-earning capacity, MCL 418.301(4) is sufficiently clear in what it requires.

capacity. Only then can the magistrate render an informed determination of eligibility.

The dissent next asserts that we have indulged in "judicial creativity" to invent the requirement that the employer may be entitled to discovery in attempting to rebut an employee's claim. *Post* at 2-4. However, discovery is hardly a novel concept in workers' compensation proceedings. Rather, it may sometimes be necessary to effect the legislative intent that some, but not all, workplace injuries entitle the worker to benefits; it may sometimes be necessary to enable the magistrate to make a fully informed decision regarding whether a claimant has proven a disability; and it may sometimes be necessary to afford an employer the opportunity to present a meaningful defense.

The dissent asserts that we have "create[d] a new rule of discovery in disability hearings" in holding that the employer has a right to discovery. *Post* at 10. However, there has been discovery for both sides before the hearing on a regular basis in workers' compensation proceedings. In *O'Brien v Federal Screw Works*, 1998 Mich ACO 53, p 4, the WCAC, sitting en banc, affirmed the magistrate's order directing the defendant to allow a tour of its plant, stating:

> In examining the dissenting opinion, we cannot help noting that our colleagues would allow plaintiff to subpoena lab reports, material safety data sheets and any other relevant papers and documents. They would further allow depositions of defendant's representatives (not specifically provided for in the statute except in the case of medical experts). However, they would not allow the magistrate to order a physical inspection of defendant's premises, even during the trial (as they define that term), because of a lack of statutory authority.

We cannot agree with this narrow interpretation. As noted, there is no explicit statutory authority which allows for the deposing of lay witnesses. Rather, the common practice of magistrates has long been to err on the side of information rather than ignorance. For this reason, accommodations are regularly made for the taking of lay testimony where necessary (even of plaintiff on occasion) despite the lack of explicit statutory authority.

It is clear that discovery is an integral part of workers' compensation proceedings that has been consistently upheld by the WCAC. See, e.g., *White v Waste Mgt*, 2004 Mich ACO 4, p 7 (holding that the employer's entitlement to a meaningful defense was hindered when the magistrate precluded its vocational expert from meeting with the claimant); *Nessel v Schenck Pegasus Corp*, 2003 Mich ACO 272, pp 7-8 (stating that, to the extent the claimant or the employer has information regarding the claimant's qualifications and training, as well as the availability of jobs, such information should be exchanged before the hearing rather than during the hearing); *Rochon v Grede Foundries, Inc*, 2000 Mich ACO 534, p 6 (upholding the magistrate's order compelling the answer of more than 200 interrogatories because "magistrates have the power to compel discovery by way of exchange of information, documents, and answers to written interrogatories").

It is clear from the requirement of MCL 418.301(4) that a claimant prove a limitation in wage-earning capacity in work suitable to his or her qualifications and training that the Legislature intended to limit the universe of workplace injuries for which a claimant may recover compensation benefits. The only way to give meaningful effect to this intent is to ensure, where appropriate, that evidence is presented regarding the claimant's qualifications and training, what jobs the

27

claimant is qualified and trained to perform within the maximum salary range, and the claimant's ability to perform and obtain any of those jobs. Such an analysis will sometimes require a certain amount of discovery in order for a claimant to be able to prove a disability under the statute.

The magistrate cannot make a proper determination of whether a claimant has proved a disability without becoming fully informed of all the relevant facts. The dissent asserts that our holding allowing discovery would deprive the magistrate of his discretion to allow discovery under MCL 418.851 and MCL 418.853. However, a magistrate's discretion is no more absolute than it is in any other realm of judicial decision-making. In those cases in which a magistrate's denial of discovery effectively deprives an employer of the right to present a meaningful defense, the magistrate, as a general matter, abuses his discretion.[6]

_____

[6] The dissent asserts that under *Boggetta*, which stated that a hearing referee has the authority to require discovery, *Boggetta*, *supra* at 603-604, the employer does not have a right to discovery. However, if a magistrate has the discretion to order discovery, and such discovery is *necessary* for the employer in a particular case to sustain its burden of production, then the magistrate does abuse his discretion in failing to order discovery and denying the employer the opportunity to present a defense. The dissent also asserts that *Boggetta* is not applicable because the statute it relied on has been modified. *Boggetta*, *supra* at 602-603, quoted with approval the WCAB opinion, which first cited Rule 7 of the workmen's compensation department's rules of practice, 1954 Mich Admin Code, R 408.7: "'At the hearing in any case, the hearing referee may call witnesses and order the production of books, records, including hospital records, accounts and papers which he deems necessary for the purpose of making an award.'" This language reflected the authority granted under the predecessor to MCL 418.853, former MCL 413.3, which stated, in pertinent part: "The board or any member thereof shall have the power to administer oaths, subpoena witnesses and to

(. . . continued)

28

The statute provides the magistrate with the authority and discretion to extract as much information from the parties as is necessary for the magistrate to make a proper determination in a case. A magistrate cannot make a proper determination without becoming fully informed of the facts regarding a claimant's limitation in wage-earning capacity in work suitable to his qualifications and training. The disposition of a case on the basis of partial information might well under some circumstances constitute an abuse of discretion, especially when, as

---

(continued . . .)

examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute." The WCAB concluded that Rule 7 gave the hearing referee authority to carry out certain actions, but did not constitute an exhaustive list of what a hearing referee could do in workmen's compensation proceedings. *Boggetta*, *supra* at 602. The WCAB then cited the predecessor to MCL 418.851, former MCL 413.8, which stated that a hearing referee "'shall make such inquiries and investigations as it (he) shall deem necessary.'" *Id*. at 603. The WCAB concluded that the hearing referee's responsibility was "'broad enough to require the answering of interrogatories requested by one of the parties if such answers are necessary to a proper inquiry into the facts.'" *Id*. The "substantial alteration" in the statute that the dissent refers to, *post* at 14, is effectively that the language "at the hearing" was added in MCL 418.851. Applying *Boggetta*'s reasoning, this change would not alter the holding at all. These two provisions accord a magistrate the authority to require necessary discovery throughout the entire process of examining the case to render a proper decision regarding whether a claimant has proved a disability. They do not purport to constitute an exhaustive list of actions a magistrate may take. In addition, the WCAC, sitting en banc, addressed the meaning of this amendment in *O'Brien*, *supra* at 3, in which it held that the addition of this language was a result of statutory changes in 1985, in which the authority to assign cases was removed from the Bureau of Worker's Disability Compensation and vested in the newly created Board of Magistrates. The language "The worker's compensation magistrate at the hearing" was merely a replacement of the previous language, "The hearing referee assigned to any hearing." *Id*. Therefore, the phrase "at the hearing" is a qualifier for the word "magistrate" and refers to the entire proceedings before the magistrate, and does not refer to only a portion of those proceedings.

here, the restriction on disclosure effectively relieves a claimant of the obligation to satisfy his burden of proof.

The employer has the right to present a meaningful defense. Yet, the dissent would deprive the employer of any right to discovery and, consequently, any practical way of sustaining its burden of production. How would the employer necessarily know what skills or training an employee had obtained in the course of his life that might be compatible with an employment position? How would the employer necessarily be apprised of the myriad factors that would facilitate or impede an employee's ability to secure an equivalent position in the event of an injury?

The dissent again confidently asserts that the employer here possessed sufficient information, in the form of claimant's employee file and transcripts from prior hearings, for its expert to conduct a transferable-skills analysis. How does the dissent know this? Certainly, this assertion is inconsistent with the magistrate's assessment of the testimony that defendant's vocational expert "would need to meet with plaintiff to perform a transferable job skill analysis." Moreover, as the dissenting commissioner noted, plaintiff attended college on three separate occasions *after* he began his employment with defendant, and that this training, however limited, "would be relevant in determining if he had any post injury job qualifications and training . . . ."

Even more significantly, what are the standards for the dissent's assertions? If there had been no prior proceedings, would the employer be limited to its

personnel files?    Must an employer maintain personnel files in specific anticipation of someday having to do a wage-earning capacity analysis on an employee?   How does an employer accurately establish wage-earning capacity without access to information from the best-informed person in the world concerning that subject: the claimant himself?

The dissent also alludes to the employer's duty under MCL 418.319(1) to provide an injured employee with vocational rehabilitation services, but immediately takes issue with the employer's right to interview the employee in this regard.  Just as with the matter of discovery, it is unclear how the dissent would have the employer satisfy its obligation in this regard without affording it some means to access to necessary information.  In both of these realms, the dissent prefers to deny the employer any ability to gather information necessary to defend itself.

## V. CONCLUSION

We reiterate that *Sington* overruled *Haske* and, therefore, that the procedures of the workers' compensation process must reflect this change in the caselaw.  The claimant bears the burden of proving a disability by a preponderance of the evidence under MCL 418.301(4), and the burden of persuasion never shifts to the employer.  The claimant must show more than a mere inability to perform a previous job.  Rather, to establish a disability, the claimant must prove a work-related injury *and* that such injury caused a reduction of his maximum wage-

31

earning capacity in work suitable to the claimant's qualifications and training. To establish the latter element, the claimant must follow these steps:

(1)     The claimant must disclose all of his qualifications and training;

(2)     the claimant must consider other jobs that pay his maximum pre-injury wage to which the claimant's qualifications and training translate;

(3)     the claimant must show that the work-related injury prevents him from performing any of the jobs identified as within his qualifications and training; and

(4)     if the claimant is capable of performing some or all of those jobs, the claimant must show that he cannot obtain any of those jobs.

If the claimant establishes all these factors, then he has made a prima facie showing of disability satisfying MCL 418.301(4), and the burden of producing competing evidence then shifts to the employer. The employer is entitled to discovery before the hearing to enable the employer to meet this production burden. While the precise sequence of the presentation of proofs is not rigid, all these steps must be followed.

In this case, claimant did not sustain his burden of proving a disability. The Court of Appeals erred in holding that claimant sustained his burden of proving that he was disabled from all jobs within his qualifications and training because the existence of other jobs within his qualifications and training paying the maximum wages was not apparent. The Court of Appeals also erred by holding that evidence concerning whether claimant has reasonable employment options

available for avoiding a diminution in his wages in a position within his qualifications and training is not part of a claimant's proofs, and further erred by effectively shifting the burden of proof to the employer to demonstrate that there are jobs available within the claimant's qualifications and training. Finally, the Court of Appeals erred in holding that the magistrate did not abuse his discretion by denying the employer's expert the opportunity to interview claimant before the hearing. Given the inconsistent application of the *Sington* standard in the past, we believe that it would be equitable to allow claimant the opportunity to present his proofs with the guidance provided by this opinion. Accordingly, we reverse those portions of the Court of Appeals judgment and remand this matter to the magistrate for a new hearing consistent with the procedures set forth in this opinion.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

FREDIE STOKES,

      Plaintiff-Appellee,

v                                No. 132648

CHRYSLER LLC, formerly known as
DAIMLERCHRYSLER CORPORATION,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

Today, the majority judicially creates new procedures, a heightened evidentiary standard, and compelled discovery for workers' compensation hearings. The majority exercises its creativity at the expense of Michigan workers, whom this opinion places at "significant risk." *Ante* at 15-16. Because these new provisions subvert the will of the Legislature, ignore the language of the Worker's Disability Compensation Act (WDCA), and recklessly risk the well-being of Michigan workers, I dissent.

The Legislature created a careful balance of critical interests in the WDCA. The act extinguished a worker's common-law claim for injury at work, providing an exclusive and limited remedy for such an injury. The result is lower and more predictable injury compensation costs for employers. But injured workers also benefit under the act:

The family of the [injured worker] . . . knew privation and sorrow when injury stopped income. True, the injured workman would not get full "damages" as that term is used in the law. The amount of his recovery was carefully circumscribed. It was limited to interference with earning capacity. The workman might be so grotesquely disfigured as to shock even the insensitive, yet for this harm there was no compensation, unless aided by statute. . . . [T]he workman has given up his common-law action, and can no longer seek damages from a jury. However, there was a giving on both sides. In return for the workman's limited monetary recovery he got the certainty of adequate compensatory payments without recourse to litigation. [*Crilly v Ballou*, 353 Mich 303, 308-309; 91 NW2d 493 (1958).]

The people's elected representatives crafted the WDCA with precision. It states that "[p]rocess and procedure under this act shall be as summary as reasonably may be." MCL 418.853. Thus, "it is repugnant to attempt to judicially read into the act other requirements or conditions that operate to defeat or limit its aim." *Kidd v Gen Motors Corp*, 414 Mich 578, 588; 327 NW2d 265 (1982). This Court has long recognized the clear limit on judicial creativity. "'The workmen's compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. *Rights, remedies, and procedure thereunder are such and such only as the statute provides.*'" *Paschke v Retool Industries*, 445 Mich 502, 511; 519 NW2d 441 (1994), quoting *Luyk v Hertel,* 242 Mich 445, 447; 219 NW 721 (1928) (emphasis in *Paschke*). Under the WDCA, a claimant who proves that he suffered a "disability" is entitled to benefits. MCL 418.301. Importantly, though the WDCA defines the term, the act does not provide any particular procedure for proving the existence of a disability.

2

Instead, the Legislature leaves it up to the claimant regarding how to proceed in proving his case.

Today, the majority finds the act wanting. The majority reads a new requirement into the act: an injured worker must now provide the equivalent of a "transferable-skills analysis" to show a limitation of wage-earning capacity when establishing a disability under MCL 418.301(4). This equivalent of a transferable-skills analysis is a key component of the new procedure the majority creates to prove a disability. According to the majority, a claimant must disclose his qualifications and training, present the equivalent of a transferable-skills analysis identifying the "universe of jobs" for which he might be qualified, and show that his work-related injury prevents him from performing jobs or that he is otherwise unable to obtain jobs for which he might be qualified; the employer may then rebut the claimant's proofs and, finally, the claimant "may then come forward with additional evidence to challenge the employer's evidence." *Ante* at 14-17. In addition to these novel requirements, the majority creates a new right: the employer has a right to discovery. Specifically, the employer's vocational expert "must be permitted to interview" the claimant. *Ante* at 17.

There is no support or authority in the WDCA for the new requirements, procedures, and rights the majority reads into the act. As a whole, this procedural gauntlet is inimical to the longstanding respect this Court has afforded the careful balance crafted by the people's representatives in the WDCA: "[T]he WDCA is in derogation of the common law, and its terms should be literally construed without

3

judicial enhancement." *Paschke,* 445 Mich at 510-511. Further, the specific requirements that a claimant must provide the equivalent of a transferable-skills analysis and submit to an interview by the employer's expert are not supported by the language of the act. Accordingly, the majority invades the province of the Legislature by adopting these new requirements.

The majority effectively requires a claimant to present a transferable-skills analysis. Defendant's vocational expert in the present case described the analysis:

> . . . I would probably need to complete what is called the transferable skills analysis, where I would take the profile that was essentially presented of [plaintiff's] work history, his educational background, his restrictions as outlined by both physicians and enter all that information into the computer and essentially have that profile, all the variables of that profile bounced off of the U.S. Department of Labor's Dictionary of Occupational Titles. All of their job classifications to assess what jobs might be most appropriate falling within the restrictions and other qualifications and training as noted.

As an alternative to this complex analysis, the majority allows that the claimant may "provide some reasonable means to assess employment opportunities to which his qualifications and training might translate."[1] *Ante* at 14-15. But, in

---

[1] The Code of Federal Regulations also defines "transferable skills":

> What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled *work activities you did in past work* can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs. [20 CFR 404.1568(d)(1) (emphasis added).]

4

either case, the WDCA simply does not require this level of evidentiary proof to show a limitation in wage-earning capacity.

Comparison to the WDCA's requirement for proof of injury is instructive. MCL 418.385 requires extensive and specific proofs of injury. It states that "[a]fter the employee has given notice of injury . . . , if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or surgeon authorized to practice medicine under the laws of this state . . . ." This demonstrates that the Legislature knows how to create a requirement of detailed proof when it wants to. The Legislature required detailed proof to show a work-related injury. It did not require the same level of evidentiary detail to show a limitation in wage-earning capacity. The "express mention in a statute of one thing implies the exclusion of other similar things." *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971); see also *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003).

The WDCA does not authorize or require a claimant to present a transferable-skills analysis or its equivalent to show disability. But the act does require *the employer* to provide a transferable-skills analysis, or its equivalent, for an employee after he has been found disabled. MCL 418.319(1) reads, in part:

> When as a result of the injury [an employee] is unable to perform work for which he or she has previous training or experience, *the employee shall be entitled to such vocational rehabilitation services, including retraining and job placement*, as may be reasonably necessary to restore him or her to useful

5

employment. If such services are not voluntarily offered and accepted, the director on his or her own motion or upon application of the employee, carrier, or employer, after affording the parties an opportunity to be heard, may refer the employee to a bureau-approved facility for evaluation of the need for, and kind of service, treatment, or training necessary and appropriate to render the employee fit for a remunerative occupation. Upon receipt of such report, the director may order that the training, services, or treatment recommended in the report be provided *at the expense of the employer*. [Emphasis added.]

The requirements of MCL 418.319(1) sound very much like a transferable-skills analysis or its reasonable equivalent. In fact, a transferable-skills analysis is part of the vocational rehabilitation services offered by the Workers' Compensation Agency.[2] Given that the act requires *employers* to provide and pay for a transferable-skills analysis *after* disability is established, it is simply astonishing that the majority would require the injured employee to provide and pay for this same detailed analysis, or its equivalent, in order to prove a disability.

Likewise, the act contemplates a similar analysis conducted by competent individuals trained in the field when an injured worker is also eligible for unemployment benefits. MCL 418.301 states:

(6) A carrier shall notify the Michigan employment security commission of the name of any injured employee who is

---

[2] Michigan's guidelines for vocational rehabilitation providers state: "Vocational rehabilitation is composed of numerous activities leading to the goal of returning the injured/ill individual to productive employment. Vocational rehabilitation encompasses such services as counseling, job analysis, placement, labor market surveys, *transferable skills analysis*, job seeking skills training and *vocational testing*." State of Michigan Vocational Rehabilitation Providers' Guidelines, p 1 (emphasis added), available at <http://www.michigan.gov/documents/Voc_Rehab_guidelines_153795_7.pdf> (accessed May 13, 2008).

unemployed and to which the carrier is paying benefits under this act.

(7) The Michigan employment security commission shall give priority *to finding employment* for those persons whose names are supplied to the commission under subsection (6). [Emphasis added.][3]

The Legislature has chosen to place the strenuous requirements of a transferable-skills analysis, or its reasonable equivalent, on the employer and the state, not on an injured worker seeking compensation.

Importantly, there is no indication that a transferable-skills analysis is a reliable indicator of a claimant's ability to find work. The Workers' Compensation Appellate Commission (WCAC), part of the Workers' Compensation Agency, an agency with specific expertise in employment matters, stated in this case that a transferable-skills analysis is speculative:

[W]e reject the concept that the measurement of work suitable to an employee's qualifications and training includes a "transferable skills" analysis. Such an analysis suggests that work which the employee has never performed and, therefore, is totally unaware of its physical or mental requirements, can be utilized to measure disability.

. . . Such proofs could go on forever if the employee has held even a few different kinds of jobs. And, no matter how exhaustive (and exhausting) the proofs, such a standard still leaves open the

---

[3] I note that the WDCA does not require an injured worker to look for work in order to prove a disability or receive compensation. MCL 421.28(1)(a), part of the Employment Security Act, demonstrates that the Legislature knows how to create such a requirement when it wishes. Such a requirement does not exist in the WDCA.

employer's arguments in briefing on appeal that the employee can answer only with argument and not with evidence. Both employee and employer must be excused from impossible burdens. [*Stokes v DaimlerChrysler Corp*, 2006 Mich ACO 24, p 73.]

The majority puts an impossible burden on injured workers, in opposition to the letter and purpose of the WDCA. "[I]t is repugnant to attempt to judicially read into the act other requirements or conditions that operate to defeat or limit its aim." *Kidd,* 414 Mich at 588.

In finding that Mr. Stokes had sufficiently met the requirements of MCL 418.301(4), the Court of Appeals stated:

> The magistrate never limited the inquiry to whether plaintiff could no longer do his job. The magistrate examined plaintiff's qualifications and training and came to the *factual* conclusion that his qualifications and training limited him to jobs driving a hi-lo and working in a warehouse, and "physically strenuous work from which he is clearly disabled." This conclusion was based on plaintiff's testimony concerning his prior jobs, his education and training, and defendant's failure to produce evidence showing that, contrary to plaintiff's proofs, there were, in fact, jobs within plaintiff's qualification or training that he could perform that would provide him with his maximum wage. This conclusion was amply supported by the record. [*Stokes v DaimlerChrysler Corp*, 272 Mich App 571, 592; 727 NW2d 637 (2006).]

I agree with the Court of Appeals that Mr. Stokes satisfied the requirements of MCL 418.301(4). The majority states that "[c]laimant merely testified regarding his employment and educational background" and that he "presented no evidence that he had even considered the possibility that he was capable of performing any job other than driving a forklift." *Ante* at 19. This is a mischaracterization of the proceedings before the magistrate. The magistrate

conducted a substantial inquiry into Mr. Stokes's qualifications and training, which included his hobbies and non-work-related activities going back more than 30 years.[4] The magistrate then concluded: "In fact, I find that [Mr. Stokes's] training and qualifications limit him to physically strenuous work from which he is clearly disabled due to his significant spinal cord compression." The magistrate found, as a matter of fact, both (1) that Mr. Stokes's qualifications and training qualified him to do only physically strenuous work and (2) that his disability prevented him from doing physically strenuous work. There was simply no job for which Mr. Stokes was qualified that he was physically able to perform. I am mystified about what the majority finds lacking in Mr. Stokes's proofs.[5] Under these circumstances, I believe it was reasonable for the magistrate to find that Mr. Stokes had suffered a reduction in his wage-earning capacity.

---

[4] Thus, the magistrate did not confine himself to reviewing whether Mr. Stokes was disabled from a single job; rather, the magistrate extensively reviewed whether Mr. Stokes had suffered a limitation in his wage-earning capacity. See *Sington v Chrysler Corp*, 467 Mich 144, 158; 648 NW2d 624 (2002).

[5] Mr. Stokes's spinal cord compression prevents him from obtaining *any* job paying the maximum wages for which he might otherwise be qualified. In light of these findings by the magistrate, any job search would obviously be an exercise in futility. As mentioned, the WDCA does not require an injured worker to look for work in order to obtain benefits. In this case, the majority requires Mr. Stokes to search for jobs that do not exist. I believe there are far more efficient uses of resources than to send claimants out on a wild goose chase for jobs that do not exist. The majority's opinion does not make "eminent sense," *ante* at 24; it is incomprehensible.

The majority also creates a new rule of discovery in disability hearings. The majority states that, in order for an employer to effectively meet its burden of production, "the employer has a right to discovery"[6] under *Boggetta v Burroughs Corp*, 368 Mich 600; 118 NW2d 980 (1962). Specifically, the employer's expert "must be permitted to interview the claimant."[7] *Ante* at 16-17. This is directly contrary to the plain language and the plain purpose of the WDCA. The majority strips the magistrate of the discretion for discovery authorized by the Legislature.

The magistrate's discretion is clearly provided in the two general discovery provisions of the act. MCL 418.851 states that the "worker's compensation

---

[6] There is no such right in the WDCA. The majority creates it today. There is also no constitutional right to discovery. *In re Del Rio*, 400 Mich 665, 687 n 7; 256 NW2d 727 (1977). Given that there is no statutory or constitutional right to discovery, the majority oversteps its bounds by recognizing such a right. As this Court has stated: "'The workmen's compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. *Rights*, remedies, and procedure thereunder are such and such only as the statute provides.'" *Baughman v Grand Trunk W R Co*, 277 Mich 70, 72; 268 NW 815 (1936), quoting *Luyk*, 242 Mich at 447 (emphasis added).

[7] The majority states that "[b]ecause claimant refused to meet with the employer's vocational expert, and the magistrate was unwilling to compel an interview, the employer's vocational expert could only provide speculative testimony regarding the effect of claimant's injury on his wage-earning capacity." *Ante* at 21. These are not the facts of this case. Defendant has identified no evidence it might have gained from interviewing Mr. Stokes that was not otherwise available. In fact, the magistrate found that defendant's own ineptitude left its expert without the necessary data. Defendant hired its vocational expert five days before the final hearing (inclusive of a weekend) and failed to provide the expert with Mr. Stokes's employee file (which was in defendant's possession) or with transcripts from prior hearings in which Mr. Stokes testified about his work and life qualifications and training. *Stokes*, 2006 Mich ACO 24 at 42-44.

10

magistrate at the hearing of the claim shall make such inquiries and investigations *as he or she considers necessary*." (Emphasis added.) This statutory provision contemplates discovery for the purposes of, and at the discretion of, the magistrate only. Likewise, MCL 418.853 states that "the director, worker's compensation magistrates, arbitrators, and the board shall have the power to administer oaths, subpoena witnesses, and to examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute." Again, the statute expressly grants the magistrate broad discretion regarding discovery. The majority's new discovery rule impermissibly strips discretion from the magistrate. If the Legislature had intended to limit the magistrate's discretion regarding discovery of vocational information, it would have done so. It did not.

There is one statutory exception to the magistrate's broad discretion regarding discovery. MCL 418.385 applies between parties and compels discovery. It states:

> After the employee has given notice of injury and from time to time thereafter during the continuance of his or her disability, if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer or the carrier. If an examination relative to the injury is made, the employee or his or her attorney shall be furnished, within 15 days of a request, a complete and correct copy of the report of every such physical examination relative to the injury performed by the physician making the examination on behalf of the employer or the carrier. The employee shall have the right to have a physician provided and paid for by himself or herself present at the examination. If he or she refuses to submit himself or herself for the examination, or in any way obstructs the same, his or her right to compensation shall be

11

suspended and his or her compensation during the period of suspension may be forfeited. Any physician who makes or is present at any such examination may be required to testify under oath as to the results thereof. If the employee has had other physical examinations relative to the injury but not at the request of the employer or the carrier, he or she shall furnish to the employer or the carrier a complete and correct copy of the report of each such physical examination, if so requested, within 15 days of the request. If a party fails to provide a medical report regarding an examination or medical treatment, that party shall be precluded from taking the medical testimony of that physician only. The opposing party may, however, elect to take the deposition of that physician.

MCL 418.385 overrides the discretion of the magistrate and compels employees to submit to employers' discovery requests for medical information.[8] It is extensive and specific. The Legislature knows how to require discovery when it wants to. It did so regarding medical information. It did not regarding a transferable-skills analysis or any other form of discovery related to a claimant's qualifications and training. "This court cannot write into the statutes provisions that the legislature has not seen fit to enact." *Passelli v Utley*, 286 Mich 638, 643; 282 NW 849 (1938).

The majority cites *Boggetta*, asserting that the case stands for the proposition that "the employer has a right to discovery" under the WDCA "if discovery is necessary for the employer to sustain its burden and present a

---

[8] MCL 418.222(2) also requires both the employee and the employer to disclose relevant medical records at the time of an application for a hearing or a written response. It does not apply to subsequent proceedings and further indicates the majority's error in creating discovery rules additional to those the Legislature saw fit to provide.

meaningful defense."[9] *Ante* at 16. It does not. First, *Boggetta* was decided solely on jurisdictional grounds, so its comments on the permissible scope of discovery in workers' compensation hearings are dicta. Second, *Boggetta* did not require the magistrate to compel discovery; it merely stated that a magistrate *could* require discovery between parties at the magistrate's discretion. *Boggetta* does not create a right of discovery in any party, and it does not strip the magistrate of discretion. Finally, *Boggetta* does not apply here because the Legislature has significantly modified the statute it relied on.

The Court in *Boggetta* stated that its advisory comments were grounded "by the statute quoted in the appeal board's ruling." *Boggetta,* 368 Mich at 603-604. *Boggetta* interpreted former MCL 413.8, which stated that "the member or deputy member of the commission assigned to any hearing in accordance with the provisions of [former MCL 413.7] shall make such inquiries and investigations as it shall deem necessary." MCL 413.8 was repealed and replaced by MCL 418.851,[10] which was subsequently amended to read that "the worker's compensation magistrate *at the hearing of the claim* shall make such inquiries and investigations as he or she considers necessary."[11] (Emphasis added.)

---

[9] I observe that if compelled discovery is necessary in this case, it is difficult to imagine the case in which it would not be.

[10] 1969 PA 317.

[11] 1994 PA 271.

This is a substantial alteration of the former statute. The added language, "at the hearing," *limits* the scope of permissible discovery.[12] In fact, the amended

---

[12] This is a substantial change for the matter at hand because *Boggetta* was grounded in the "'broad general language'" of the former statute. *Boggetta*, 368 Mich at 603 (citation omitted). This "broad" language was subsequently qualified and limited by amendment. Thus, not only is the discovery rule in *Boggetta* dicta and not on point, but its statutory grounding has been substantially altered. The majority asserts that the amendment "was merely a replacement of the previous language," apparently contending that the amendment was meaningless. *Ante* at 29 n 6. For this proposition, the majority cites the WCAC en banc decision in *O'Brien v Federal Screw Works*, 1998 Mich ACO 53. But in the present case, the WCAC stated:

> [S]ince the issuance of *Boggetta*, this *dicta* [regarding discovery] has been given undue attention without recognizing that, in the passage of time, the Worker's Compensation Act has been amended since 1962 when *Boggetta* was decided. . . .
>
> It may be saying too much to assert that the amendment that was codified in what is now MCL 418.851 intended to adopt the dissenting position in *Boggetta*, but it can be stated that the amendment knocked the foundation out from under the majority opinion in *Boggetta*. For this reason, and because the language in *Bogetta* is *dicta*, we agree that any party's confidence in *Boggetta* as authority for allowing a magistrate to require a party to participate in pre-trial discovery (e.g., plant tours, interrogatories, meeting with vocational consultants) may be easily dashed. [*Stokes,* 2006 Mich ACO 24 at 47-48.]

Specifically addressing the case that the majority refers to here, the WCAC stated that "[i]n *O'Brien*, the majority suggested that the 1985 amendments . . . were written simply to alter the assignment of cases from the Director . . . to some other unstated entity." *Id.* at 53. The WCAC then observed that who assigned cases was irrelevant: "The language 'at the hearing' . . . has a very plain meaning no matter what administrative body assigns the cases for hearing." *Id.* at 54. The commission concluded: "We believe that 'the hearing' in MCL 418.851 means what it says and refers to the hearing of the claim at which time the parties present their proofs in whatever fashion is necessary and it is done on the record." *Id.* at 53. In coming to this conclusion, the WCAC observed that *O'Brien* had admitted

(. . . continued)

14

language appears to call into question even the limited advisory holding of *Boggetta*. Before the hearing is simply not "at the hearing." If it were, the added language would not have been necessary. The Legislature has subsequently modified the statute at issue in *Boggetta* to *limit* discovery. The majority's new rule broadly *expands* discovery. Indeed, it *compels* discovery between parties, which the act does not expressly allow. Further, it strips the statutorily mandated discretion of the magistrate. Under the WDCA, the propriety and form of discovery are within the magistrate's discretion.[13] What the statute gave, the majority takes away.

---

(continued . . .)
that "'there is no explicit statutory authority which allows for the deposing of lay witnesses.'" *Id.* at 52, quoting *O'Brien*, 1998 Mich ACO 53 at 4. The WCAC found this critical because "[w]hat is lacking in the administrative discussion of the issue of discovery is any true recognition that the authority for discovery has to be identified explicitly in the Act and that an implicit authority is not legally sufficient." *Stokes,* 2006 Mich ACO 24 at 50. See also *Baldus v Michigan*, 1997 Mich ACO 429, p 4 ("The legislature, by amending [MCL 418.851] to limit the magistrate's inquiries and investigations to those conducted at the hearing, seems to have adopted the [*Boggetta*] dissent's position.").

[13] The majority states that "[i]t is clear that discovery is an integral part of workers' compensation proceedings that has been consistently upheld by the WCAC." *Ante* at 27. This is not the issue; the issue is whether the magistrate has discretion regarding discovery (as stated in the WDCA) or is forced to require discovery in certain situations (as mandated today by the majority).

To support its decision to override the statutory discretion afforded the magistrate and to force magistrates to compel vocational interviews, the majority cites a smattering of WCAC cases. I do not find the cases compelling on this point. With one exception, the cases do not stand for the proposition that the magistrate is required to compel discovery in certain situations; the cases simply affirm the magistrate's discretion to order such discovery as he deems necessary.
(. . . continued)

15

(continued . . .)

For instance, in *Nessel v Schenck Pegasus Corp*, 2003 Mich ACO 272, p 7, the commission began with the obvious: "Certainly, the worker's compensation arena has never had full discovery as provided for in the Michigan General Court Rules." The commission went on to conclude:

> While pre-trial access to information is critical, the extent of discovery and the precise form which disclosure may take, is commended to *the broad discretion* of worker's compensation magistrates. However, it is error for a magistrate confronted with requests for information pursuant to *Sington* to categorically deny requests for information on the ground such information is not subject to pre-trial production. The need for particular information must be assessed on a *case-by-case* basis. [*Id.* at 8 (emphasis added).]

The majority disregards the broad discretion the WDCA affords the magistrate and replaces the "case-by-case" evaluation contemplated in *Nessel* with categorically compelled discovery for employers' vocational experts. *Nessel* does not support the majority's new discovery rule.

Likewise, in *Rochon v Grede Foundries, Inc*, 2000 Mich ACO 534, p 6, while the commission asserted "that magistrates have to the power to compel discovery," the commission did not assert that this Court has the power, under the WDCA, to categorically compel a magistrate to require discovery in certain situations. Indeed, the commission noted the unique circumstance and specific scope of its decision: "Given the unique problems that a death case presents, the magistrate acted reasonably and within his discretion in ordering the discovery." *Id.*

Similarly, *O'Brien* did not categorically embrace vocational discovery; rather, the commission again addressed a specific circumstance, stating that *Bogetta* "stands for the proposition that limited discovery tools such as interrogatories may be utilized in cases involving unique problems, i.e., death cases." *O'Brien,* 1998 Mich ACO 53 at 3. So the cases cited by the majority stress the magistrate's discretion and address specific circumstances in which, on a case-by-case basis, discovery may be required; more importantly, they are diametrically opposed to the majority's discretion-stripping mandate.

In *White v Waste Mgt*, 2004 Mich ACO 4, the commission did require a magistrate to compel the claimant to submit to an interview by the employer's

(. . . continued)

The WDCA states that the "worker's compensation magistrate at the hearing of the claim shall make such inquiries and investigations as he or she considers necessary." MCL 418.851. The WDCA also states that "worker's compensation magistrates . . . have the power . . . to examine such parts of the

_____

(continued . . .)
vocational expert. Addressing that aberrant decision, the commission in the present case, sitting en banc, stated:

> We disagree with the majority opinion in *White* . . . .
> . . . Neither the Court's decision in *Sington*, nor "the reality of legal requirements and evolved complex burdens of evidentiary proofs mandated by modern case law such as found in *Sington*," have moved the Legislature to alter the authority of the magistrate. While it is accurate to state that the opinion in *Sington* changed perceptions of the Worker's Compensation Act, we must recognize that the Act, itself, did not change after *Sington* was issued. *Sington* has merely provided a party with the motivation to assert that there is dormant authority in the Act that now must be awakened." [*Stokes*, 2006 Mich ACO 24 at 51, quoting the dissent in *White*, 2004 Mich ACO 4 at 14.]

The commission then concluded:

> If the Legislature determines that it had made an unwise choice in failing to allow for discovery, it is the legislative prerogative to amend the Act and provide for it. Certainly, along the way, the Legislature could then provide some guidance as to what is a permissible and what is an impermissible use of vocational consultants. The Legislature could also determine whether *Sington* actually codified the definition of disability it intended and whether it is prudent to divert the limited dollars of employers and employees in the worker's compensation arena away from efforts to put employees back to work and in the direction of vocational consultants. [*Stokes,* 2006 Mich ACO 24 at 61.]

Because there is no statutory authority for its decision, the majority stretches for support in WCAC decisions. But such support is not consistent or substantial.

17

books and records of the parties to a proceeding as relate to questions in dispute."[14] MCL 418.853. The majority states that the workers' compensation magistrate must require the claimant to submit to an interview with the employer's expert. *Ante* at 17. The majority's new discovery rule is simply contrary to the language of the WDCA.

This discovery rule is a new requirement. The majority insists that its opinion creates no new requirements.[15] *Ante* at 23. The majority attempts to disguise the new requirement as necessary to prevent abuse of discretion. *Ante* at 28. This is disingenuous. There can be no abuse if there is no discretion, and there can be no discretion if there is no choice. Under the majority's new rule, there is no choice; the employer's expert "must be permitted to interview the claimant." *Ante* at 17. Now, every time an employer requests to have its expert interview a claimant, the magistrate must comply.

The majority assures us that its new discovery rule will apply only when "such discovery is *necessary* for the employer in a particular case . . . ." *Ante* at 28

---

[14] This is consistent with the nature of the proceedings envisioned by the WDCA. "'Proceedings under the workmen's compensation act are purely statutory,—administrative, not judicial,—inquisitorial, not contentious,—disposed of not by litigation and ultimate judgment, but summarily.'" *Hayward v Kalamazoo Stove Co*, 290 Mich 610, 616-617; 288 NW 483 (1939), quoting *Hebert v Ford Motor Co*, 285 Mich 607, 610; 281 NW 374 (1938).

[15] The majority opinion also claims to "afford guidance in the application of *Sington* . . . ." *Ante* at 28-29. If *Sington* requires rewriting the WDCA, then *Sington* should be reviewed.

18

n 6. But in this case, the defendant sought information that was completely unnecessary. To review, Mr. Stokes had worked for defendant his entire adult life; at a previous hearing, he disclosed all his out-of-work hobbies, activities, and experience (including the content of the high school classes and college courses he had attended decades earlier); it is uncontested that his severe spinal compression disables him from all physically strenuous labor. When asked what information was lacking, the defendant's expert stated that he would need Mr. Stokes's "work history, his educational background, [and] his restrictions as outlined by both physicians . . . ." All this information was in the hands of defendant well in advance of the hearing. Defendant has identified no evidence that it hoped to discover.[16] If compelled discovery is "necessary" in this case, it will be "necessary" in all cases. This Court has stated that "'[r]ights, remedies, and procedure [under the WDCA] are such and such only as the statute provides.'" *Paschke*, 445 Mich at 511, quoting *Luyk,* 242 Mich at 447 (emphasis in *Paschke*).

---

[16] In its attempt to characterize the magistrate's exercise of discretion in this case as abuse of that discretion, the majority states the general proposition that a "magistrate cannot make a proper determination without becoming fully informed of the facts regarding a claimant's" reduced wage-earning capacity. *Ante* at 29. I fully agree, and, when such a case is presented to this Court, I will vote accordingly. But that proposition has nothing to do with this case. The magistrate's review was extensive, and he considered all relevant facts, including employment opportunities. The majority has not identified one relevant fact or inquiry that would hint that the magistrate in this case was less than fully informed.

19

The majority asserts that discovery is not a "novel concept in workers' compensation proceedings." *Ante* at 26. I agree. The WDCA expressly gives the magistrate the power to compel testimony and the production of documents. MCL 418.853. The act authorizes the magistrate to make inquiries and investigations. MCL 418.851. Magistrate-directed discovery is not novel at workers' compensation hearings. But it is novel to endow employers with a "right to discovery" when that right is found nowhere in the statute. It is novel to require a magistrate to compel discovery in certain situations when the act gives the magistrate broad discretion in discovery: "The worker's compensation magistrate at the hearing of the claim shall make such inquiries and investigations *as he or she considers necessary*." *Id.* (emphasis added).

The majority states that the "magistrate cannot make a proper determination of whether a claimant has proved a disability without becoming fully informed of all the relevant facts." *Ante* at 28. Again, I agree. But in this case, as noted, the magistrate conducted a thorough review of all the relevant facts.

The standards for workers' compensation hearings are found in the WDCA. Today the majority finds the language of the act wanting and creates new procedures, requirements, and rules. The majority exercises its creativity, in opposition to the purposes of the act, at the risk of injured workers. This Court has stated that "the act should be liberally construed to grant rather than to deny benefits." *Paschke,* 445 Mich at 511. Likewise, this Court has held that the careful legislative balance in the act was created "to provide financial and medical

20

benefits to victims of work-connected injuries in an efficient, dignified and certain form." *Whetro v Awkerman*, 383 Mich 235, 242; 174 NW2d 783 (1970).

The majority confesses recognition that its requirements, especially the requirement of a transferable-skills analysis or its equivalent, place injured workers at "significant risk." *Ante* at 15. This risk is evident "because the employer always has the opportunity to rebut the claimant's proofs," and thus "the claimant would undertake *significant risk* by failing to reasonably consider the proper array of alternative available jobs because the burden of proving disability always remains with the claimant." *Ante* at 15-16 (emphasis added).

The requirement creates significant risk because the claimant may not understand what is required in a transferable-skills analysis. A claimant may not have the knowledge or skills required to accurately conduct a transferable-skills analysis. Further, as the Court of Appeals observed in this case, there is a considerable risk that a transferable-skills analysis "would inaccurately depict a claimant's actual ability to obtain gainful employment and result in a virtually impossible burden of proof for the plaintiff[.]"[17] *Stokes,* 272 Mich App at 583-

---

[17] I agree with the majority that "any reasonable person" would assess her employment alternatives if she were injured outside the workplace such that she could not perform her current job. *Ante* at 24. But Mr. Stokes cannot perform any job for which he might be qualified. For Mr. Stokes, the answer to the question, Is there another job in which I am employable at a similar wage? is "No." Requiring him to search for work that cannot be found is unreasonable. See *ante* at 24. Further, I believe that Michigan workers wish to work for a living. I suspect few Michigan employees view an injury resulting in job loss as a welcome opportunity

(. . . continued)

584. The significant risk the majority creates by requiring a transferable-skills analysis or its equivalent is inimical to certain and summary proceedings and, therefore, intolerable under the WDCA. Further, it improperly adds to the burden and expense of injured workers seeking compensation for work-related injuries.

The majority informs us that, although required to provide a detailed vocational analysis, a claimant "is not required to hire an expert . . . ." *Ante* at 15. However, as a practical matter, the claimant will face even greater risk if he does not hire an expert. The majority clearly assumes that employers will have vocational experts at workers' compensation proceedings to best support their positions. With the employer's expert locked and loaded, the prudent claimant will have like reinforcement. The vocational proofs required virtually ensure that claimants will need experts. Additionally, because of the uncertainty and expense imposed by this regime, it will almost certainly be more difficult for injured workers to find competent representation. This burden of uncertainty, difficulty, and expense is contrary to the "certainty of adequate compensatory payments without recourse to litigation" contemplated in the act. *Crilly*, 353 Mich at 309.

---

(continued . . .)
to become acquainted with their couches. Consequently, I do not believe that denying injured workers' claims for assistance is necessary to prevent statewide destruction. And even if I were convinced of the majority's policy assertions, I would be constrained by the language of the WDCA from denying benefits to a deserving claimant. Mr. Stokes has severe spinal compression. He is not able to perform his former job or any other paying a similar wage. The majority's decision to deny him benefits is unreasonable and unsupportable.

22

Finally, I note that the majority asserts that today's decision will enhance "the competitiveness of Michigan as a workplace with other states . . . ."[18] *Ante* at 22 n 4. But Michigan is a state, not a business. This state's first responsibility is the health and welfare of its citizens. It is for the Legislature to make policy decisions. The Legislature has crafted a careful balance of critical concerns in the WDCA.[19] This Court has stated that "[i]t is *not* this Court's role to decide whether the Legislature acted wisely or unwisely in enacting this statute. We will not substitute our own social and economic beliefs for those of the Legislature, which is elected by the people to pass laws." *McAvoy v H B Sherman Co*, 401 Mich 419, 439; 258 NW2d 414 (1977). Today, the majority takes a different view. I respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly

---

[18] I find it quite ironic that this Court's "textualists," first, have no problem adding language to the statute and, second, assert what good public policy their additions create.

[19] The majority emphasizes that fairness to employers compels its creative amendments of the WDCA. But that is precisely the point: the Legislature has carefully balanced the equities in the act. This Court should not attempt to adjust the scales that Michigan lawmakers have set.

S T A T E   O F   M I C H I G A N

SUPREME COURT

FREDIE STOKES,

      Plaintiff-Appellee,

v

No. 132648

CHRYSLER LLC, formerly known as
DAIMLERCHRYSLER CORPORATION,

      Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I join Justice Cavanagh's dissenting opinion, but write separately to highlight that my separate concurrence in *Sington v Chrysler Corp*, 467 Mich 144, 172; 648 NW2d 624 (2002), did not concur in, and differed from, the view of the majority of four (Chief Justice Taylor and Justices Corrigan, Young, and Markman) that under the workers' compensation act, MCL 418.301(4), and under *Sington,* the claimant always has the burden of proof.

In this case, writing for the majority of four, Justice Markman states that, under *Sington,* the claimant failed to sustain his burden of proving that his work-related injury effected a reduction of his maximum wage-earning capacity in work suitable to his qualifications and training.

I disagree with the majority of four. Rather, I agree with the Court of Appeals decision below that once a claimant has established his or her disability

by a preponderance of the evidence, the burden of going forward with the evidence shifts as the parties present their proofs. Thus, the burden of proving a disability remains with the claimant, but the burden of proof shifts back and forth as each party brings forth further evidence.

Further, I concur with Justice Cavanagh's conclusion that the majority of four reads a new requirement into the act: namely, that under the majority's view, a claimant must provide a "transferable-skills analysis" to show a limitation of wage-earning capacity as proof of a disability under MCL 418.301(4). For the reasons stated in Justice Cavanagh's dissent, I do not think that either the statute or *Sington* can be correctly interpreted in that manner.


Elizabeth A. Weaver

2